**370**

John G. JACKSON, et al., Plaintiffs,

v.

The TRUTH SEEKER COMPANY,
INC., et al., Defendants,

Lawrence TRUE, Trustee of the James
Hervey Johnson Charitable Educational
Trust and the Truth Seeker Trust; and
The Truth Seeker Company, Inc., Plain-
tiffs,

v.

John G. JACKSON, a private individual,
et al., Defendants.

Nos. 87–1441–K (LSP), 91–0494–K (LSP).

United States District Court,
S.D. California.

Nov. 21, 1994.

Roy R. Withers, San Diego, CA, for plain-
tiffs in No. 91–0494–K (LSP).

Elbert J. Boone, San Diego, CA, Scott E.
Schutzman, Long Beach, CA, for defendants
in No. 91–0494–K (LSP).

John W. Vinson, Austin, TX, for plaintiffs in No. 87–1441–K (LSP).

Roy R. Withers, Withers & Goulding, San Diego, CA, for defendants in No. 87–1441–K (LSP).

## OPINION AND ORDER

REAL, District Judge.

The court held a non-jury trial concurrent with a hearing to determine whether there were any material facts in dispute on defendants' Rule 12(b) motion which was being considered as a motion for summary judgment. For the reasons stated below, the court ordered judgment in favor of the defendants.

## I. FACTUAL BACKGROUND

This matter involves two law suits and a counterclaim. These three cases essentially boil down to a controversy between John G. Jackson and Madalyn O'Hair on one side and James Hervey Johnson on the other. The dispute concerns the promulgation of atheist ideology and the survival of Truth Seeker Company, Inc. ("TSC, Inc.") and *The Truth Seeker*, the publication established to spread atheist doctrine throughout the English speaking world. These matters are complicated only in the sense that parties who were, at best, observers of the Jackson–O'Hair–Johnson dispute were caught in the elaborate web of Johnson's counterclaims. A brief history of TSC, Inc. and the key players in these cases will go a long way in unraveling the confusion.

*The Truth Seeker* magazine was initiated in 1873. In 1940, one Charles Smith took over operation of *The Truth Seeker* and filed articles of incorporation in New York, thus creating TSC, Inc. The articles specified perpetual life and authorized issuance of 200 shares of stock with a provision for the issuance of more.

In the early 1960s, Smith presented O'Hair and Jackson, on separate occasions, with stock interests in TSC, Inc. because of the work they had done for his company and the atheist movement in general.[1] However, no evidence of stock ownership resulting from these transfers survives. O'Hair was never issued a stock certificate although there is no evidence that a stock certificate was not issued and held by Smith. Jackson claims that his stock certificates were either lost during a move or thrown away because he thought they had no pecuniary value. Furthermore, at the time she was given a stock interest, O'Hair was asked to take over the publication of *The Truth Seeker*, which she declined to do.

Charles Smith died in 1964. Prior to his death, Smith moved to San Diego, California and there joined up with Johnson. After Smith's death Johnson, acting as president of TSC, Inc., continued to publish the magazine although it remains unclear as to how Johnson came into possession of the corporate structure. No evidence was presented at trial of Johnson's ownership or inheritance of TSC, Inc. In 1981, 1983 and 1984 O'Hair requested that Johnson relinquish management and control of TSC, Inc. and its publication. Johnson refused. Meanwhile, under his stewardship, *The Truth Seeker*'s subscribers list dwindled from 25,000–30,000 to 200–400 subscribers by 1987.

Nineteen eighty-seven was a busy year in this saga. O'Hair felt particular urgency in taking over *The Truth Seeker* for the benefit of the atheist movement because she was worried about Johnson's advanced age and poor health and the drastic decline in subscriptions. Besides these concerns, O'Hair was further troubled because she had recently learned that Johnson's will left all his property in an open-ended trust to be administered by Lawrence Y. True, a non-atheist. O'Hair enlisted Stephen B. Thorne and Robin Shelley to assist Johnson in publication of *The Truth Seeker* as well as to obtain evidence of wrongdoing by Johnson in the conduct of TSC, Inc. and its sister non-profit organizations, American Association for Advancement of Atheism and The National Lib-

---

1. Notably, Smith was grateful to O'Hair for having won a significant victory for the atheist movement in the United States Supreme Court case *School District of Abington Township v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

**372**

eral League[2]. It paid off because Thorne observed Johnson commingling funds from these organizations with his own. He apprised O'Hair of the commingling.

Additionally, in the summer of 1987, O'Hair regularly noticed a meeting of shareholders and other atheist "regulars" and "old-timers" interested in *The Truth Seeker*. A notice of the meeting was sent personally to Johnson; he did not attend. The meeting was held in Austin, Texas, the situs of O'Hair's offices and of a new corporation named Truth Seeker of Austin, Inc. ("TSA, Inc."). At this meeting O'Hair was elected to office by the persons present.

From June 1988 to September 1989 O'Hair distributed, without charge to anyone, a series of three newsletters, appropriately titled *The Truth Seeker Newsletter*, detailing publicly her efforts to re-start a viable atheist publication, Johnson's activities at TSC, Inc. and the progress of the lawsuits concerning Johnson and the defendants in both cases. Moreover, O'Hair attempted to freeze TSC, Inc.'s assets pending resolution of the litigation then in progress and in contemplation of future litigation to determine corporate ownership. In her capacity as an officer of TSA, Inc., she presented a corporate resolution to the bank and post-office to re-route TSC, Inc. mail to a post office box under Thorne's control in Escondido, California. No TSC, Inc. funds were ever withdrawn nor did any damage result to Johnson or the corporation from these actions.

Furthermore, in early 1987 O'Hair first learned that Jackson had also received a stock interest from Smith in TSC, Inc. After O'Hair informed Jackson of Johnson's misconduct which Thorne had reported, O'Hair and Jackson decided to obtain the advice of a lawyer, John W. Vinson, who was in the employ of O'Hair's companies in Texas.

They were advised by Vinson that he had researched the matter and that Jackson could file a stockholder's suit in California to require an accounting by Johnson of TSC, Inc. activities. Jackson took the attorney's advice.

## II. PROCEDURAL HISTORY

In October 1987, Jackson, as a shareholder of TSC, Inc., instituted the first law suit against defendants TSC, Inc., James Hervey Johnson[3], and the two not-for-profit corporations, American Association for Advancement of Atheism and The National Liberal League [hereinafter "the *Jackson* case"]. Alleging that Johnson commingled TSC money with his own, misappropriated funds into his personal accounts and generally mismanaged the accounts and the book distribution business of TSC, Inc., Jackson sought an accounting and other relief concerning the operation of TSC, Inc.

On this underlying action, the Estate filed a counterclaim for itself and TSC, Inc. against several defendants, the most important for the purposes of this opinion being Jackson and O'Hair[4] [hereinafter "the *Johnson* case"]. The counterclaim was brought for (1) conversion; (2) trademark/tradename infringement; (3) conversion and infringement of common law rights; (4) violation of the Lanham Act (15 U.S.C. § 1125(a)); (5) RICO (18 U.S.C. § 1962(b)); (6) conduct of an enterprise involving interstate commerce through a pattern of racketeering activity (18 U.S.C. 1962(c)); and (7) conspiracy to violate 18 U.S.C. 1962(b) racketeering activity to acquire/maintain interest/control of an enterprise engaged in/affecting interstate commerce.

On April 11, 1991 a second law suit was filed by True, trustee of the James Hervey

---

2. Johnson was allegedly the president of these not-for-profit corporations.

3. James Hervey Johnson was the originally named defendant. On August 6, 1988 Johnson died and his estate took his place in the law suit.

4. The other defendants are Jon Garth Murray, Robin Murray O'Hair, Arnold Via, Robin Shelley, all individuals, and American Atheist G.H.Q., Inc., aka America Atheist Center, a Texas corpo-

ration; The Society of Separationists, Inc., a Maryland corporation; American Atheists, Inc., a Texas corporation; Charles E. Stevens American Atheist Library and Archives, Inc., a Texas corporation; American Atheist Press, Inc., aka Gustav Broukal Press, a Texas corporation; United World Atheists, Inc., a Texas corporation. During the pendency of the *Jackson* case, the counterclaimants dismissed defendants Via, Thorne and Shelly.

Johnson Charitable Educational Trust and the Truth Seeker Trust, both created by the will of Johnson [hereinafter "the *True* case"]. This action was brought for malicious prosecution against Jackson and O'Hair as well as a familiar cast of other defendants.[5]

Subsequently, the *Jackson* case fell victim to summary judgment because Jackson could not produce the stock certificates he claimed were given to him by Smith. The *Johnson* case and the *True* case were consolidated and proceeded as a jury trial. This proceeding ended in a deadlocked jury. A mistrial was declared and the matter then came before me for a new trial.

Defendants moved to have the new trial proceed as a non-jury trial. First, they argued that the evidence at the first trial established that Johnson and True had not suffered damages of twenty dollars or more, the threshold requirement which triggers the constitutional right to a civil trial by jury as guaranteed by the Seventh Amendment. Second, there was no federal or state statute creating a right to jury trial in an action for conversion, trademark/tradename infringement, malicious prosecution or for violations of the Lanham Act or RICO.

Ruling for the defendants, the court held that Johnson had failed to file a timely jury demand on the counterclaims or present proof of damage of twenty dollars or more in the first trial. The *Johnson* case was to proceed non-jury. As for the *True* case, the court found that the evidence showed that the plaintiffs had not suffered a minimum of twenty dollars in damages nor was there a statute providing for a jury trial in a malicious prosecution action, and thus were not entitled to a civil jury trial.

On the eve of trial, defendants moved to dismiss all causes of action. Under the circumstances, the court decided that the matters proceed simultaneously on two-tracks— as a non-jury trial and a hearing to determine whether there were any material facts

in dispute on the motion to dismiss which would now be treated as a motion for summary judgment on all claims.

## III. DISCUSSION

### A. Substantive Claims

If, as a matter of law, the lack of written evidence establishing stock ownership was fatal to Jackson's lawsuit so it must likewise be fatal to Johnson's and True's standing to claim ownership in TSC, Inc. or a proprietary interest in *The Truth Seeker*. However, the court need not rely on the issue of standing to find for the defendants in this matter because the plaintiffs simply did not establish their prima facie case. During the non-jury trial/hearing, the plaintiffs failed to present evidence as to the following material facts:

1. That American Atheist G.H.Q., Inc., aka American Atheist Center, a Texas corporation; the Society of Separationists, Inc., a Maryland corporation; American Atheists, Inc., a Texas corporation; Charles E. Stevens American Atheist Library and Archives, Inc., a Texas corporation; American Atheist Press, Inc., aka Gustav Broukal Press, a Texas corporation; and United World Atheists, Inc., a Texas corporation are the alter egos of any of the defendants;

2. That the corporations listed in paragraph one were aware of activities of Jackson or O'Hair in bringing the *Jackson* case until Johnson's counterclaim was filed in 1988;

3. That any of the corporate defendants had any knowledge of TSA, Inc. activity until after the counterclaim was filed in 1988;

4. That defendants Robin Murray–O'Hair, John Garth Murray, or the corporate defendants ever authorized or ratified any attempt to take-over TSC, Inc.;

5. The defendants are John W. Vinson, attorney of record for the filing of the *Jackson* case; American Atheist G.H.Q, Inc., aka American Atheist Center, a Texas corporation; The Society of Separationists, Inc., a Maryland corporation; American Atheists, Inc., a Texas corporation; Charles E. Stevens American Atheists Library and Archives, Inc., a Texas corporation; American Atheist Press, Inc., aka Gustav Broukal Press, a Texas corporation; and United World Atheists, Inc., a Texas corporation.

5. That any person was confused or likely to be confused as to the source of the San Diego-issued *The Truth Seeker* and the Austin-issued *The Truth Seeker Newsletter;*

6. That any act performed by any defendant was done for any fraudulent purpose;

7. That any defendant gained any profit by reason of any act performed during the relevant period encompassed by these cases;

8. That any defendant acted with any motive or ill will toward plaintiffs;

9. That the amounts incurred and paid as attorneys' fees by plaintiffs were reasonable or necessary to the prosecution of these actions; the inference is to the contrary that these fees are in fact exorbitant;

10. That they suffered any damage resulting from the defendants' alleged conduct underlying either the *Johnson* or *True* cases.

At trial, this failure of proof equates to a verdict for the defendants. If treated as the defendants' motion for summary judgment, this court is required to grant the motion. "[S]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial[,] [t]he moving party is 'entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Moreover, the uncontroverted facts that were presented during this proceeding do not aid the plaintiffs' cases. The facts that O'Hair had been told by Thorne of his witnessing Johnson's commingling and that O'Hair and Jackson sought and followed the advice of counsel provide the necessary probable cause for bringing the *Jackson* case. These facts defeat the charge of malicious prosecution. O'Hair and TSA, Inc.'s mere re-routing of TSC, Inc.'s mail does not legally support any claim of mail or wire fraud, which are necessary as predicate acts in a RICO claim. Nor does any of the conduct amount to any illegal action by O'Hair that would give rise to RICO consideration.

Based on the forgoing, it does not matter whether the court treated these proceedings as a non-jury trial or a hearing on defendants' motion to dismiss that the court *sua sponte* considered as a motion for summary judgment. In either instance, the court would order, and does order, judgment for the defendants.

## B. The Jury Issue

■ The issue on the right to a jury trial in the *True* case for malicious prosecution was raised by the defendants' motion *in limine* on the grounds that plaintiffs had neither a constitutional nor statutory right to a civil jury trial. The right to a jury trial in a civil case is conferred by the United States Constitution, by a state constitution or by a statute that creates a cause of action different from the common law. In a malicious prosecution action, there is no statutory right to a jury trial. Absent such a statute, the right to a jury trial in federal court is a matter of federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691, 693 (1963). Therefore, if these plaintiffs can successfully assert a right to a civil jury trial, it must be grounded in the Seventh Amendment of the United States Constitution.

■ The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." To maintain that right the controversy must exceed twenty dollars. It is because the plaintiffs' in their first trial failed to prove twenty dollars or more in damages that the court decided to proceed without a jury on the malicious prosecution claim at the second trial.

Malicious prosecution at common law was an action for recovery of damages resulting to a person, a person's property or a person's reputation from an unsuccessful proceeding, either civil or criminal. The testimony at the first trial showed that neither Johnson nor his estate suffered damages resulting from the action filed. At common law attorneys' fees were not recoverable as an element of damages. *Stewart v. Sonneborn,* 98 U.S. 187, 25 L.Ed. 116 (1878). Since Johnson

offered no evidence of cognizable common-law damage to his person, business or reputation that would meet the constitutional minimum, the case does not qualify under the Seventh Amendment for a jury trial.

As a matter of first impression and perhaps as just a curious incursion into constitutional interpretation, the twenty dollar threshold of the Seventh Amendment right to a jury trial in civil cases ought to be brought into the imminent reality of the 21st century. The twenty dollar requirement seems lost in its applicability to today's world. A party in a federal question case may demand a jury if the claim exceeds twenty dollars. However, if that same party wants a federal jury to decide the claim in a diversity of citizenship case, perhaps one involving the same conduct, to even get in the door of a federal courthouse the claim must exceed $50,000.

Perhaps the larger issue to be considered is whether or not there is any sanction for construing otherwise clear and unequivocal language in the Constitution to accommodate changes in the historical development of the law. In this instance, is a threshold of twenty dollars part of the constitutional guarantee or is it only a measure of the importance of the matter such that it requires presentation to a jury of so-called peers? Or can this "threshold" be treated merely as an extension of fact finding without a jury under the rubric of equity? *See* Note, *The Right to a Non-Jury Trial,* 74 Harv.L.Rev. 1176, 1181 (1961).

To justify construction of the Constitution in this manner, the basic question ought to be does a change in the monetary requirement of a jury trial do any violence to the fundamental purpose of a jury trial. The absurdity of requiring six or twelve citizens to sit in judgment of a controversy involving as little as $21 is obvious. Even in the world of strict constructionists vs. activists, there should be little debate that perhaps the twenty dollar threshold is not essential to the operation of a viable jury system. The twenty dollar threshold cannot be reached in this case, however, under any interpretation of the Seventh Amendment. Therefore, pursuant to Federal Rule of Civil Procedure 39(a)(2), this court finds that these plaintiffs do not have a right to a jury trial.

■ There is yet another problem in this case. The plaintiffs fully participated in the proceedings. They could have refused to go forward with the non-jury trial. Instead, the plaintiffs chose to present their case in its entirety. Assuming a right to jury trial existed in this case, such conduct has been held to be a waiver of that right. *See White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.1990) *cert. denied* 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990); *Royal American Mgrs., Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1018 (2d Cir.1989); *Lovelace v. Dall,* 820 F.2d 223, 227–29 (7th Cir.1987) (per curiam); *United States v. 1966 Beechcraft Aircraft Model King Air A90 Cream,* 777 F.2d 947, 950–51 (4th Cir.1985); *Allen v. Barnes Hosp.,* 721 F.2d 643, 644 (8th Cir.1983).

The opinion in *White v. McGinnis* is instructive. In *White,* the plaintiff, despite having filed a demand for jury trial, participated in the two-day bench trial. *White,* 903 F.2d at 703. After losing, the plaintiff complained he had not waived his right to jury trial as set forth by Federal Rule of Civil Procedure 39(a)(1), and thus was denied his constitutional right. *Id.* The plaintiff's claim was really an effort to get a second bite at the apple; the court of appeals clearly saw the attempt for what it was. The Ninth Circuit stated,

> A party's vigorous participation in a bench trial, without so much as a mention of a jury, cannot be presumed the result of mere inadvertence, but can only be ascribed to knowledgeable relinquishment of the prior jury demand. This is especially so where, as here, "the [objecting] party was 'on notice that the trial court was planning to adjudicate the dispositive issues of fact.'" ... "[C]ourt judgments should have meaning and effect instead of being a futile exercise that one of the parties will be able to overturn no matter what the result." The appellant chose to argue his case fully before the district judge; it is not unjust to hold him to that commitment.

*Id.* (citations omitted).

In the *True* case, the plaintiffs vigorously advocated the matter, from lengthy opening

statement to post trial submission of proposed findings of fact and conclusions of law. The record reflects that the plaintiffs were fully apprised that this matter was being heard without a jury, that the proceeding was both a non-jury trial and a hearing on a motion for summary judgment, and that dispositive issues of fact were to be determined by the presiding judge. They could have filed a writ of mandamus or sought an interlocutory appeal to halt the proceedings. But for an objection in order to "make the record," the plaintiffs' conduct clearly indicated they acquiesced to the manner in which the case was to proceed. Therefore, even if the plaintiffs had a right to a jury trial, they have waived that right by their conduct. The estate of James Hervey Johnson had its full day in court.

### IV. CONCLUSION

Treating the evidence presented to the court either as a motion for summary judgment determining material facts without controversy or as a trial on the merits judgment shall be for the defendants. Judgment shall be entered accordingly.