In re Bernard D. GLANNON,
Former Alleged Debtor.

Bernard D. Glannon, Appellant,

v.

Edwin P. Carpenter and Michael
B. Meyers, Appellees.

Nos. 91–40230, 98–2516–JWL.

United States District Court,
D. Kansas,
Kansas City Division.

Feb. 9, 2000.

Kenneth C. Jones, Norton, Hubbard, Ruzicka & Kreamer, L.C., Olathe, KS, Randolph G. Willis, Steven B. Moore, Rasmussen, Barton & Willis, Kansas City, MO, for Debtor/Appellant.

Jan M. Hamilton, Topeka, KS, Chapter 13 Trustee.

R. Pete Smith, McDowell, Rice, Smith & Gaar, Kansas City, MO, for Appellees.

Mark G. Flaherty, J. Bradley Leitch, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for James W. Garrett, Sr., Movant.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This action arises out of the involuntary bankruptcy filing against appellant Bernard D. Glannon in 1991. On May 4, 1992, the bankruptcy judge made a journal entry finding that the involuntary petition was filed in bad faith by Garrett & Associates, Inc. (GAI) and later joined in bad faith by Oakview Treatment Centers of Kansas (Oakview). The bankruptcy judge dismissed the involuntary bankruptcy petition, but retained jurisdiction to consider whether to award damages pursuant to 11 U.S.C. § 303(i) and whether to impose sanctions pursuant to Fed.R.Civ.P. 11 and Fed.R.Bankr.P. 9011. Over the next six years, various motions were filed and ruled upon, and an eleven day bench trial was held on the issue of damages and sanctions resulting from the bad faith filing. Ultimately, on September 17, 1998, the bankruptcy judge issued a Memorandum Opinion and Judgment awarding appellant damages against GAI and its owner, James Garrett (Garrett), and imposing sanctions against attorneys Michael B. Myers and Edwin P. Carpenter.

Appellant now appeals portions of that order, as well as decisions made by the bankruptcy court in the six years preceding it (Doc. 1). For the reasons set forth below, the bankruptcy court is affirmed in part and reversed in part.

## I. Background

On February 5, 1991, GAI filed a petition in involuntary bankruptcy against appellant pursuant to 11 U.S.C. § 303(b)(2). The action was later joined by Oakview and Baby Grand Corp. as additional petitioning creditors. On April 27, 1992, the bankruptcy court held a trial on the petition, from which resulted a Journal Entry of Judgment dated May 4, 1992. The bankruptcy judge found that the petitioners had not proven, as required by 11 U.S.C. § 303(h)(1), that appellant had not generally been paying his debts, and therefore the judge dismissed the involuntary petition. See May 4, 1992 Journal Entry at 2. In addition, the bankruptcy judge found that appellant had met the burdens set forth in 11 U.S.C. § 707(a), proving that the petition was filed in bad faith by GAI and joined in bad faith by Oakview. See id. Specifically, the bankruptcy judge found that "the petition herein was filed by Garrett and Associates, Inc. as a litigation tactic, in an attempt to gain advantage in certain litigation in [Kansas state court]." Id. at 5. While dismissing the bankruptcy petition, the bankruptcy court retained jurisdiction "to consider entry of judgment against Garrett and Associates, Inc., James W. Garrett, Sr., and Oakview Treatment Center of Kansas, Inc., d/b/a Cedar Ridge Hospital pursuant to 11 U.S.C. § 303(i), and imposition of sanctions against Cheryl D. Myers, Michael B. Myers, Edwin P. Carpenter, and Carpenter, Weir & Myers, Chartered, pursuant to F.R.C.P. Rule 11 and F.R.B.P. Rule 9011." Id. at 4. Up until the dismissal of the petition, Cheryl Myers represented GAI, Michael Myers represented Oakview, and Edwin Carpenter represented James Garrett. Michael Myers and Edwin Carpenter were members of the law firm Carpenter, Weir & Myers, Chartered.

In conjunction with the action for § 303(i) damages, appellant filed a demand for a jury trial and contemporaneously moved the bankruptcy court to transfer the proceedings to the United States District Court for the District of Kansas. (R. 26, 27) On October 2, 1992, the bankruptcy court denied appellant's requests. (R. 35)

On October 23, 1992, in consideration of a joint request by the parties, the bankruptcy judge certified his conclusion on the merits of the bankruptcy petition pursuant to Fed.R.Civ.P. 54(b). (R. 36) The bankruptcy judge determined that his "order dismissing the involuntary petition and denying relief against Mr. Glannon should become final and appealable, that there is no just reason for delay." (R. 36 at 2) The bankruptcy judge stated, however, that "[n]otwithstanding the above determination and direction, this Court retains jurisdiction over petitioning creditors Garrett & Associates and Oakview and their former counsel to consider imposition of judgement under 11 U.S.C. § 303(i) and to consider imposition of sanctions under F.R.CIV.P. 11 and F.R.B.P. 9011." (R. 36 at 3)

On March 26, 1993, appellant filed with this court an application for interlocutory appeal of the bankruptcy court's refusal to transfer the proceeding to the district court and to grant appellant a jury trial on the § 303(i) issues. In an order dated April 15, 1993, Judge Saffels determined that a ruling on the right to a jury trial would not materially advance the termination of this litigation. *In re Glannon,* 153 B.R. 571, 572 (D.Kan.1993). He further found that "there is no question that the bankruptcy court has the authority to retain jurisdiction for the purpose of awarding costs, attorney's fee and damages after dismissal of an involuntary bankruptcy proceeding.... The court finds Glannon's arguments to the contrary to be without merit." *Id.* Accordingly, Judge Saffels denied appellant's application for interlocutory appeal. *See id.* Appellant then filed a Petition for Writ of Mandamus

with the Tenth Circuit challenging Judge Saffel's ruling, which writ was also denied. *See* September 17, 1998 Memorandum and Order (hereinafter "Bankr.M & O") at 23.

On July 10, 1995, a bench trial on the issues of damages and sanctions was begun in the bankruptcy court. *See id.* at 11. The trial consumed eleven days between July 10, 1995 and February 28, 1996. *See id.* At the trial, appellant offered the expert testimony of Gerald W. Olson, Ph.D. as to appellant's allegedly lost earning capacity caused by the filing of the involuntary bankruptcy petition. *See id.* at 32. The bankruptcy court was not persuaded by Dr. Olson's testimony and awarded appellant no damages for lost-earnings. *See id.* The bankruptcy judge did, however, award appellant other damages pursuant to 11 U.S.C. § 303(i). *See id.* at 36. On September 17, 1998, the bankruptcy judge rendered a judgment for appellant against GAI and Garrett, jointly and severally, in the amount of $91,269.67 for attorney's fees incurred prior to the dismissal of the involuntary petition, $100,-000 actual damages, and $50,000 punitive damages. *See id.* In addition, the bankruptcy judge imposed sanctions, pursuant to Bankr.R.Civ.P. 9011, against Edwin Carpenter and Michael Myers in the amount of $30,000 each. *See id.*

## II. Legal Standard

■ On September 28, 1998, appellant filed his Notice of Appeal. (R. 65) The court has jurisdiction to hear appeals from the bankruptcy courts pursuant to 28 U.S.C. § 158. In deciding such appeals, the court may not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *See Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990). The bankruptcy court's conclusions of law are reviewed de novo. *See id.*

## III. Discussion

Appellant presents the following five issues for review:

A. Did the bankruptcy court err in denying appellant's motion to transfer the damages phase of the proceedings to the district court?

B. Did the bankruptcy court err in denying appellant's demand for a jury trial?

C. Did the bankruptcy court err in holding that attorneys of petitioning creditors cannot be liable under 11 U.S.C. § 303(i)?

D. Did the bankruptcy court err in denying appellant attorney's fees incurred after the dismissal of the involuntary bankruptcy petition?

E. Did the bankruptcy court err in rejecting the trial testimony of Dr. Olson?

The court will address each of these issues in turn.

## A. Did the bankruptcy court err in denying appellant's motion to transfer the damages phase of the proceeding to the district court?

■ Appellant's first argument on appeal is that once the bankruptcy court certified its dismissal of the involuntary bankruptcy petition as a final order pursuant to Fed.R.Civ.P. 54(b) it lost subject matter jurisdiction to determine appellant's 11 U.S.C. § 303(i) claim for damages.[1] Appellant asserts that bankruptcy courts are courts of limited jurisdiction which do not have subject matter jurisdiction over civil proceedings that do not have some effect on the administration of a bankruptcy "case." Appellant Brief at 8. While appellant acknowledges that a bankruptcy court may retain jurisdiction to impose damages *before* the dismissal of an involuntary petition becomes final, he claims that "[w]hen no one appealed the dismissal of the involuntary bankruptcy petition after it had been certified as a final order, there was no longer any involuntary bankruptcy 'case' pending against Mr. Glannon." Appellant Brief at 8. Therefore, appellant contends, the bankruptcy court lost jurisdiction because appellant's § 303(i) claim "could have no effect on the bankruptcy estate." Appellant Brief at 8. The court disagrees.

The court finds that the bankruptcy court retained jurisdiction over the § 303(i) aspects of the case, even after it certified the dismissal of the involuntary bankruptcy petition as final. The court starts from the basic premise that bankruptcy courts clearly retain jurisdiction to consider whether or not to award a debtor § 303(i) damages after the court has dismissed the petition for involuntary bankruptcy.[2] *See R. Eric Peterson Constr. Co., Inc. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co., Inc)*, 951 F.2d 1175, 1179 (10th Cir.1991); *Bradner v. Cooper School of Art, Inc. (In re Cooper School of Art, Inc.)*, 709 F.2d 1104, 1105–06 (6th Cir. 1983); *In re Godroy Wholesale Co., Inc.*, 37 B.R. 496, 498 (Bankr.D.Mass.1984).

---

1. Appellant raises this issue for the first time on appeal. Appellant asserts that he filed his motion requesting transfer of further proceedings to the United States District Court on May 14, 1992. Although this assertion is true, appellant's request for transfer was premised on the fact that appellant sought a jury trial which, he argued, the bankruptcy court was not empowered to conduct. While appellant argued in his Motion to Transfer that the bankruptcy court did not have jurisdiction to conduct a jury trial, he did not argue that the bankruptcy court lacked jurisdiction to determine the § 303(i) issue because of its Rule 54(b) certification. In fact, appellant could not have possibly made such an argument because the bankruptcy court did not make its Rule 54(b) certification until October 23, 1992—after the court had ruled on appellant's Motion to Transfer. However, recognizing that subject matter jurisdiction may not be waived and that the alleged lack thereof may be raised at any time, the court entertains this issue. *See Huffman v. Saul Holdings, L.P.*, 194 F.3d 1072, 1076–77 (10th Cir.1999).

2. In fact, the Tenth Circuit has held that a dismissal of the bankruptcy petition is one *prerequisite* that must be met before the bankruptcy court can make a § 303(i) award. *See R. Eric Peterson Constr. Co., Inc. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co., Inc.)*, 951 F.2d 1175, 1179 (10th Cir.1991).

The court can find no reason why a Rule 54(b) certification by the bankruptcy court should change this basic jurisdictional rule.

First, the Tenth Circuit has held that bankruptcy courts have jurisdiction over "core proceedings." *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir.1990) (citing 28 U.S.C. § 157). The Tenth Circuit defined core proceedings as "proceedings which have no existence outside of bankruptcy....Actions which do not depend on the bankruptcy laws for their existence ... are not core proceedings." *Gardner*, 913 F.2d at 1518; *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987) ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding."). Section 303(i) proceedings clearly depend on bankruptcy law for their existence; they do not arise unless an involuntary bankruptcy petition is dismissed by the bankruptcy court. Thus, the court finds § 303(i) proceedings to be core proceedings.[3]

Second, courts hold that even when a bankruptcy case or bankruptcy estate has been closed, the bankruptcy court retains jurisdiction to enforce remedies created by specific sections of the bankruptcy code. *See In re Fox*, 171 B.R. 31, 33 (Bankr.E.D.Va.1994) (bankruptcy court

has jurisdiction to make a § 303(i) determination even after the court dismissed the petition and closed the case by order); *In re Banks–Davis*, 148 B.R. 810, 813 (Bankr.E.D.Va.1992) (bankruptcy court retains jurisdiction even after a bankruptcy estate is closed when a party is seeking a remedy created by a specific section of the bankruptcy code). While the court has not been cited to and has not uncovered any case involving a Rule 54(b) certification of a proceeding arising out of 11 U.S.C. § 303, the court finds this situation highly analogous to the closing of a bankruptcy estate after a dismissal of the involuntary bankruptcy petition. In each, the bankruptcy court may lose the opportunity to amend its rulings with respect to the bankruptcy estate—the only factor that distinguishes these cases from those involving only a dismissal of the bankruptcy petition, cases in which the bankruptcy court clearly has jurisdiction. Thus, the court finds that the bankruptcy court had jurisdiction to decide the § 303(i) proceeding, a proceeding to enforce a specific section of the bankruptcy code.

In light of the above analysis, the court finds appellant's argument that a bankruptcy court's jurisdiction is limited to actions having an effect upon a bankruptcy estate to be flawed.[4] Appellant's reliance

3. The bankruptcy judge also found the proceeding to be core. *See* Bankr.M & O at 1 n. 2. The court's research has found no case determining that § 303(i) proceedings are *not* core proceedings. The court has found one case holding that a proceeding for damages and sanctions under § 303(i) and Fed. R.Bankr.P. 9011 was a core proceeding. *See In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 904 (Bankr.N.D.Ill.1994). Moreover, courts have held that claims seeking damages against attorney's in bankruptcy courts are core proceedings. In *Hershman v. Thorne (In re Stockert Flying Service, Inc.)*, 74 B.R. 704, 706–08 (N.D.Ind.1987), the court held that a negligence action against the debtor's attorney for mishandling the bankruptcy estate was a core proceeding because, but for the filing of bankruptcy, there would be no debtor and no debtor's attorney against which to bring a claim. Similarly, in *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369–70 (7th

Cir.1991), the court held that the bankruptcy court had jurisdiction to sanction the creditor's attorney under Fed.R.Bankr.P 9011 because "the attorney's conduct concerned the administration of the estate." *Citing* 28 U.S.C. § 157(a). These cases are analogous to claims for § 303(i) damages against the creditor petitioners in this case. First, had there been no bankruptcy petition filed, appellant would not have been able to bring a § 303(i) claim against GAI or Garrett. Second, the filing of the involuntary petition by GAI and Garrett "concerned the administration of [appellant's] estate." Thus, the court is convinced that appellant's action for § 303(i) damages was a core proceeding.

4. 28 U.S.C. § 157 specifically states that bankruptcy court jurisdiction is "not limited to ... matters concerning the administration of the estate."

on *Gardner* for support of appellant's argument is misplaced. In *Gardner*, the bankruptcy court determined that the debtor had no interest in property acquired by his wife in a divorce action and thus removed the property from the bankruptcy estate. *See* 913 F.2d at 1517. The bankruptcy court then went on to determine that the debtor's wife's interest in the property was superior to the Internal Revenue Service's (IRS) lien on the property. In reversing the second determination, the Tenth Circuit explained that bankruptcy courts have jurisdiction over both "core" and "related" proceedings, as set forth in 28 U.S.C. § 157. *See id.* at 1517–18. The court determined that a tax lien dispute is not a core proceeding; it does not depend on bankruptcy law for its existence. The court further determined that the tax lien dispute was not a related proceeding because it did not "affect the distribution of assets and administration of the bankruptcy estate." *Id.* at 1519. Appellant here attempts to apply the above quoted language, which references jurisdiction by means of a "related proceeding," to all proceedings in bankruptcy courts. As previously discussed, however, the bankruptcy judge had jurisdiction over the § 303(i) claims because they were "core proceedings," not because they were "related proceedings."[5] Therefore, the court finds that the bankruptcy court did not err when it did not transfer the § 303(i) damages proceeding to the district court upon certifying the dismissal of the involuntary bankruptcy proceeding under Fed.R.Civ.P. 54(b).

**B. Did the bankruptcy court err in denying appellant's demand for a jury trial?**

▮ The second issue raised by appellant in his appeal is whether the bankruptcy court erred in denying appellant's demand for a jury trial. On May 14, 1992, shortly after the bankruptcy court ordered the involuntary bankruptcy petition dismissed, appellant filed a motion requesting a trial by jury of his entitlement to damages pursuant to 11 U.S.C. § 303(i) and all issues related to sanctions against the attorneys who filed the petition. Contemporaneously, appellant filed a motion asking the bankruptcy court to transfer the proceedings to the United States District Court. On October 2, 1992, the bankruptcy judge issued a Journal Entry denying both motions.[6] Appellant now asserts that the bankruptcy court's denial was in error because the Seventh Amendment to the United States Constitution guarantees appellant a right to a jury trial over the § 303(i) issues. The court agrees.[7]

A former alleged debtor's right to a jury trial for the determination of 11 U.S.C. § 303(i) damages is a matter of first impression. Based on the Supreme Court's landmark decision in *Granfinanciera, S.A. v. Nordberg*, however, the court finds that such a right does exist. *See* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In *Granfinanciera*, a Chapter 11 trustee filed

---

5. Similarly, *Heape v. First Federal Savings and Loan Ass'n (In re Heape)*, 134 B.R. 20 (D.Kan. 1991), does not support appellant's argument. *Heape* involved a post-dismissal contract dispute involving funds which were never part of the bankruptcy estate. The court determined that it did not have jurisdiction under the "related proceeding" prong of 28 U.S.C. § 157, as the dispute did not affect the bankruptcy estate. *See id.* at 25. The court did not specifically analyze the "core proceeding" prong, which gave the bankruptcy court jurisdiction in this case. Clearly, however, the *Heape* court did not gain jurisdiction from the core proceeding prong because the contract dispute had an existence outside of the bankruptcy code.

6. The parties have not cited the court to any excerpts in the record which explain the bankruptcy judge's reasons for denial.

7. The court does not believe that this finding is inconsistent with its finding in Section III.A above that the bankruptcy court retained jurisdiction to decide the § 303(i) damages claims. Had appellant waived his right to a jury trial, the bankruptcy court's § 303(i) determinations would have been made under proper jurisdictional authority.

an action in bankruptcy court against petitioners, Granfinanciera, S.A. and Medex, Ltda., to recover an allegedly fraudulent monetary transfer pursuant to 11 U.S.C. § 549. *See id.* at 36, 109 S.Ct. 2782. Petitioners asserted a Seventh Amendment right to a jury trial. In analyzing petitioners argument, the Court set forth a four part test for courts to apply when determining whether the Seventh Amendment entitles a party to a jury trial. First, the proceeding must be one which would have been considered an action at law "in the courts of England prior to the merger of the courts of law and equity." *Id.* at 42, 109 S.Ct. 2782. Actions to enforce statutory rights that are analogous to common law actions ordinarily decided in English law courts are sufficient to meet this prong. *See id.* Second, the remedy sought must be legal in nature. *Id.* Third, the proceeding must involve private rights, rather than public rights developed by Congress to be determined solely by a non-Article III adjudicative body. *See id.* at 51–55, 109 S.Ct. 2782. Fourth, the petitioner must not have filed a claim against the estate. *See id.* at 58, 109 S.Ct. 2782. Finding all of these prongs met, the Court held that petitioners had a right to a jury trial, "notwithstanding Congress designation of fraudulent conveyance actions as 'core proceedings.'" *Id.* at 36, 109 S.Ct. 2782.

The *Granfinanciera* four part test has been met in this case. First, the court finds that a claim for § 303(i)(2) damages is analogous to the common law claim for malicious prosecution. A comparison of the elements of each show that the claims are nearly identical. In a malicious prosecution case, the defendant must show the following:

(a) That the defendant initiated, continued, or procured civil procedures against the plaintiff.

(b) That the defendant in so doing acted without probable cause.

(c) That the defendant acted with malice, that is he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

(d) That the proceedings terminated in favor of the plaintiff.

(e) That the plaintiff sustained damages. *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438, 443 (1980) (citing Restatement (Second) of Torts § 674 (1976)). In like manner, the debtor seeking damages pursuant to § 303(i)(2) must show the following:

(a) That the creditor filed the involuntary bankruptcy proceeding against the debtor.

(b) That the creditor, in doing so, acted in bad faith.

(c) That the court dismissed the petition, thus ruling in favor of the debtor.

(d) That the debtor sustained damages. *See* 11 U.S.C. § 303. In addition to this comparison of the elements, case law lends support to the court's finding that the claims are analogous. In *Edmonds v. Lawrence Nat'l Bank & Trust Co.*, 16 Kan. App.2d 331, 823 P.2d 219 (1991), the court held that the existence of federal sanctions under the Bankruptcy Code preempted a state common law action for malicious prosecution. 823 P.2d at 222 (imposing sanctions pursuant to Fed.R.Civ.P. 11 and Fed.R.Bankr.P. 9011). Moreover, in *Sjostedt v. Salmon (In re Salmon)*, 128 B.R. 313 (Bankr.M.D.Fla.1991), the court held that in formulating § 303(i), "Congress clearly created a remedy for malicious prosecution." 128 B.R. at 315 (discussing the relationship between §§ 303(i) and 523(a)(6) of the Bankruptcy Code). These findings show that other courts have also recognized a § 303(i) claim's equivalency to a common law claim for malicious prosecution.

Significantly, a claim for malicious prosecution was considered to be an action at law in Eighteenth Century England. *See* 2 William Blackstone, Commentaries *126; 2 Wils. 244, 248 (1764); 52 Am.Jur.2d,

Malicious Prosecution § 9, p. 191; *Jackson v. Truth Seeker Co., Inc.*, 884 F.Supp. 370, 374–75 (S.D.Cal.1994). Thus, because a § 303(i) claim is analogous to an action which, at common law, was decided by English law courts, the first prong of the *Granfinanciera* test is met.

Second, appellant's claim is a legal proceeding because the remedy sought, money damages, is legal in nature. This prong of the test is even "more important than the first." *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782. The Supreme Court has repeatedly held that actions solely seeking to recover money damages are actions at law. *See Granfinanciera*, 492 U.S. at 48–49, 109 S.Ct. 2782; *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476–77, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) ("Petitioner's contention ... is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention."); *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 34 L.Ed. 873 (1891) ("It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law ... but this may be said, that where an action is simply ... for the recovery of a money judgment, the action is one at law.")

The third prong of the test is met because the § 303(i) determination involves private rights, rather than public rights. The Court defined public rights as either statutory causes of action that inhere in, or lie against, the federal government, *Granfinanciera*, 492 U.S. at 53, 109 S.Ct. 2782, or claims "so closely integrated into a public regulatory scheme to be a matter appropriate for agency resolution with lim-

ited involvement by the Article III judiciary." *Id.* at 54, 109 S.Ct. 2782 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 586, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Applying this rule, the Court ruled that a fraudulent conveyance claim brought by the bankruptcy trustee was best characterized as an action seeking a private right because it "constitute[d] no part of the proceedings in bankruptcy but concern[ed] controversies arising out of it." [8] *Id.* at 56, 109 S.Ct. 2782 (quoting *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94–95, 53 S.Ct. 50, 77 L.Ed. 185 (1932)). The Court contrasted this with claims involving a creditor's share of the bankruptcy res, which it defined as a public right. *See id.* Ultimately, the Court held that because the petitioners "have not filed claims against the estate, respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims.' Nor is that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury." *Id.* at 59–60, 109 S.Ct. 2782.

Courts interpreting this prong of the *Granfinanciera* test have concluded that proceedings which affect estate assets or the ordering of creditors' claims involve public rights, while proceedings that have no such effect involve private rights. *See, e.g., Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1331 (2nd Cir.1993) (private rights involved where "[t]he suit seeks compensation for damage done. It has nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims"); *In re North Carolina Hosp. Ass'n Trust Fund*, 112 B.R. 759, 762 (Bankr.E.D.N.C.1990) (action to recover

**8.** While this "arising out of" language is similar to language used to determine whether or not a claim is a "core proceeding," see Section III.A, it is important to note that the tests for core proceedings and public rights are clearly distinct. The *Granfinanciera* Court found that proceedings to recover fraudulent conveyances were claims for private rights, even though they arose out of the bankruptcy case, because they did not affect the bankruptcy estate. However, the Court also found that the claims were core proceedings. Thus, as in this case, claims arising out of bankruptcy law are core proceedings, yet they may also be private rights if they do not affect the bankruptcy estate.

postpetition transfers involve public rights because "protection of the estate is an essential component of the bankruptcy process"). Applying these standards, the court finds it clear that this proceeding involves private rights. Appellant seeks the imposition of damages against GAI and Garrett based on the bankruptcy court's finding that they filed the involuntary bankruptcy action against appellant in bad faith. The bankruptcy court has previously dismissed the bankruptcy petition. Therefore, the determination of this action can have no effect on the "bankruptcy estate." While appellant's § 303(i) damages arose out of the bankruptcy filing, like the fraudulent conveyance claims in *Granfinanciera*, they do not go to the essence of the bankruptcy regulatory scheme because they can have no effect on the "bankruptcy res" or on the "process of allowance and disallowance of claims." Therefore, the third prong of the *Granfinanciera* test is met.

The forth and final requirement to establish the right to a jury trial in a bankruptcy case is a showing that the petitioner did not file a claim against the estate. In *Granfinanciera*, the Supreme Court reaffirmed its holding in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), that creditors who submit claims against the bankruptcy estate surrender to the bankruptcy court's jurisdiction and are not entitled to a jury trial.[9] *Granfinanciera*, 492 U.S. at 57–58, 109 S.Ct. 2782. The Court noted that the petitioners before it were brought into the action by the bankruptcy trustee, *see id.* at 36, 109 S.Ct. 2782, and filed no claims against the es-

tate, *see id.* at 58, 109 S.Ct. 2782. A similar situation exists in this case. There is no dispute that appellant never voluntarily submitted himself to the jurisdiction of the bankruptcy court; he was brought before the court when his creditors filed an *involuntary* bankruptcy petition against him. Moreover, appellant clearly never filed a claim against the bankruptcy estate, as he was the alleged debtor and the estate was his own. In fact, appellant did not even file a claim for § 303(i) damages—the damages issue was raised sua sponte by the bankruptcy court judge in his May 4, 1992 order of dismissal. Thus, the fourth prong of the *Granfinanciera* test is also met.

■ In determining the four requirements for a jury trial in bankruptcy proceedings met, the court finds that the bankruptcy court erred in denying appellant's request for a jury trial.[10] This raises the issue of which court should conduct the jury trial. While the bankruptcy court is the appropriate court for determining whether or not a party is entitled to a jury trial, *see In re McNaughton*, 171 B.R. 65, 66 (Bankr.W.D.Mo.1994); *In re Friedberg*, 106 B.R. 50, 53 (Bankr.S.D.N.Y.1989) (rev'd on other grounds), the Tenth Circuit has held that the bankruptcy court is not the appropriate forum for actually conducting the jury trial, *see In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990). To this effect, the Tenth Circuit has stated that the Bankruptcy Code "does not authorize bankruptcy judges to conduct jury trials." *Id.* at 392. Thus, "[w]here the Seventh Amendment requires a jury trial

---

9. The Supreme Court further elaborated on the preclusive effect of filing a proof of claim in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). In *Langenkamp*, the Court reversed the Tenth Circuit and held that creditors who file claims against the estate are not entitled to a jury trial in later actions of a legal nature commenced against them by a bankruptcy trustee.

10. The court rejects appellees' argument that appellant was not entitled to a jury trial because Congress never intended that jury trials

be held in bankruptcy courts until the enactment of 28 U.S.C. § 157(e) in 1994. First, as *Granfinanciera* makes clear, if a party has a Seventh Amendment right to a jury trial Congress cannot divest the party of that right. Second, even if the court agreed that bankruptcy courts were not authorized to conduct jury trials until 1994, the court would still find, as discussed below, that the district court should withdraw its reference to the bankruptcy court and conduct the jury trial itself.

to be held in bankruptcy, that trial must take place in the district court, sitting in its original jurisdiction in bankruptcy." *Id.* Accordingly, the *Kaiser Steel* court ordered the district court to withdraw the reference to the bankruptcy court and conduct a jury trial.[11] *See id.* The court is currently sitting in its jurisdiction as an appellate court and therefore cannot conduct the jury trial in its original jurisdiction in bankruptcy. *See id.* at 387. Therefore, the court orders that the reference to the bankruptcy court be withdrawn and the case be randomly reassigned in the district court for the purpose of conducting a jury trial on appellant's claim for § 303(i) damages.[12]

## C. Did the bankruptcy court err in holding that attorneys for petitioning creditors cannot be liable under 11 U.S.C. § 303(i)?

█ Next, appellant asserts that the bankruptcy court erred in ruling that attorneys for petitioning creditors were not subject to liability under 11 U.S.C. § 303(i). By its terms, § 303(i) allows the court to grant judgment "against the *petitioners* and in favor of the debtor." 11 U.S.C. § 303(i) (emphasis added). The plain language of the statute leads the court to agree with the bankruptcy court's determination.

█ The Supreme Court has repeatedly held that the Bankruptcy Code should be interpreted in accordance with its plain language. *See, e.g., Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair,* the Court stated:

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " 489 U.S. at 242, 109 S.Ct. 1026 (interpreting the meaning of § 506 of the Bankruptcy Code) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Moreover, the Court has found that the Code is the result of congressional compromises concerning the competing interests in bankruptcy cases. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Considering these compromises, the Court found it even more important to rely on the Code's plain language, rather than on outside evidence of congressional intent. *See Ron Pair,* 489 U.S. at 240, 109 S.Ct. 1026; *Board of Governors v. Dimension Fin. Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.") Thus, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair,* 489 U.S. at 240–41, 109 S.Ct. 1026; *see also In re M & L Bus. Mach. Co.,* 75 F.3d 586, 590 (10th Cir.1996) (relying on the *Ron Pair* analysis in interpreting § 546 of the Bankruptcy Code according to its plain language).

The court has found no section of the Bankruptcy code inconsistent with § 303(i). As a result, the court need not

---

**11.** The Tenth Circuit held in a later case that a party which does not file a request for transfer to the district court contemporaneously with its request for jury trial in the bankruptcy court thereby waives its right to a jury trial. *See Stainer v. Latimer (In re Latimer),* 918 F.2d 136, 137 (10th Cir.1990). In this case, appellant filled both requests concurrently on May 14, 1992.

**12.** In the interest of judicial economy, the court will proceed to rule on the additional issues raised by appellant's appeal in the event the Tenth Circuit should disagree on appeal with the court's finding that appellant was entitled to a jury trial.

inquire beyond the plain language of the section to interpret its meaning. The language of § 303(i) allows courts to issue judgments against offending petitioners; it makes no mention of their counsel.[13] The court therefore finds that the bankruptcy court properly ruled that § 303(i) does not subject appellees to liability. *See also In re International Mobile Adver. Corp.*, 117 B.R. 154, 158 (Bankr.E.D.Pa.1990) (§ 303(i) does not apply to counsel); *Keiter v. Stracka*, 192 B.R. 150, 160 (S.D.Tex. 1996) (same); *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 706 (Bankr.D.Colo. 1984) (same); *In re Ramsden*, 17 B.R. 59, 61 (Bankr.N.D.Ga.1981) (same).

Appellant urges the court to follow *In re Exchange Network Corp.*, 92 B.R. 479 (D.Colo.1988), a decision holding that attorneys could be liable under § 303(i). The *Exchange Network* court premised its decision on a number of Tenth Circuit cases that the court interpreted as sending a "clear and sound message ... [that] when an attorney is responsible for the filing of an improper pleading or petition, he or she must bear the financial consequences of these actions." *Id.* at 480 (citing *M.E.N. Co. v. Control Fluidics*, 834 F.2d 869, 873 (10th Cir.1987); *Smith v. United States*, 834 F.2d 166, 171 (10th Cir.1987); *Woodmore v. Git–N–Go*, 790 F.2d 1497, 1498 (10th Cir.1986)). A review of these cases, however, reveals that each discusses the assessment of sanctions in a situation where a Federal Rule of Civil Procedure explicitly allowed for such.[14] In none did the Tenth Circuit apply a sanc-

tion to one who was not enumerated in a statute, as appellant is asking the court to do in this case. Therefore, the court does not agree with the reasoning in *Exchange Network*. The court is persuaded by the Supreme Court's mandate to ordinarily interpret the Bankruptcy Code according to its plain language.[15]

### D. Did the bankruptcy court err in denying appellant attorney's fees incurred after the dismissal of the involuntary bankruptcy petition?

■ The fourth issue on appeal is whether the bankruptcy court properly denied appellant attorney's fees incurred after the dismissal of the involuntary bankruptcy petition, at the damages phase of the case. In his September 17, 1998 Memorandum Opinion, the bankruptcy judge ruled that § 303(i) allows the court to award attorney's fees incurred by a successful debtor in the dismissal phase of the case at the court's discretion, but only allows the court to award attorney's fees incurred in the damages phase of the case if those attorney's fees were proximately caused by the creditor's bad faith filing. Bankr.M & O at 22, 25. The court does not agree with the bankruptcy judge's interpretation of § 303(i). As a result, the court reverses the bankruptcy court's denial of post-dismissal attorney's fees.

Section 303(i)(1) provides that if the court dismisses an involuntarily filed petition, then the court may grant the debtor

---

13. This is in contrast to § 9011 of the Bankruptcy Code which allows courts to sanction both the parties and their counsel for making misrepresentations to the court.

14. *Woodmore* and *M.E.N.* involved sanctions pursuant to Fed.R.Civ.P. 16(f), which allows the imposition of sanctions against "a party or party's attorney." *Smith* involved a dismissal for failure to prosecute pursuant to Fed.R.Civ.P. 41(b), which allows for dismissal of a plaintiff's case.

15. Appellant makes two additional arguments structured around public policy. First, he

asserts that the current statutory scheme, including Fed.R.Civ.P. 11 and Fed.R.Bankr.P. 9011, is not designed to recompense a debtor who has been damaged by an attorney wrongfully filing a petition of involuntary bankruptcy. Second, appellant argues that the "advice of counsel" defense may leave some debtors entirely without a remedy under § 303. The court, however, is not the proper body to which appellant should address these arguments. Rather, Congress is the body that developed the current statutory scheme and it is also the body which has the power to address appellant's public policy concerns.

costs and attorney's fees.[16] Section 303(i)(2) further provides that if the petition was filed in bad faith the court may grant the debtor proximately caused actual damages as well as punitive damages. The court recognizes that one could reasonably interpret these subsections as exclusive; subsection (1) only allowing an award of attorney's fees incurred in the phase of the action seeking dismissal of the petition, and subsection (2) only allowing an award of proximately caused damages and punitive damages in the phase seeking damages for a bad-faith filing. Applying well accepted rules of statutory construction, however, the court finds that the better interpretation of § 303(i) is to read the allowance of attorney's fees in subsection (1) as also encompassing subsection (2). In other words, subsection (1) applies to *all* phases of a § 303 proceeding in which the bankruptcy petition was dismissed, while subsection (2) provides a debtor *additional* recovery if the court finds that the petition was filed in bad faith.

■ As a general rule of statutory interpretation, statutes must be construed as a whole. *See Missouri, K. & T. Ry. Co. v. Haber,* 169 U.S. 613, 18 S.Ct. 488, 42 L.Ed. 878 (1898); 73 Am.Jur.2d Statutes § 191, p. 389. Thus, the court does not isolate its focus on the individual subsections of § 303(i) without attempting to understand the overall intent and purpose of the section in order to determine its meaning.

Here, the court finds instructive that § 303(i)(1) specifically states that a debtor may recover costs, while § 303(i)(2) makes no mention of costs. Because the general rule is that a prevailing party may recover costs for the entire bankruptcy proceeding, *see* Fed.R.Bankr.P. 7054(b), the court finds it illogical to construe § 303(i)(1) as either merely partially redundant or as somehow limiting an award of costs to only those costs incurred in the dismissal phase of the proceeding. The drafters surely meant that costs (e.g., witness fees, recoverable deposition expenses, and the like) were, of course, recoverable under § 303(i) without drawing a distinction between the defensive phase, in securing dismissal, or in the offensive phase, in being made whole where there was bad faith. In construing the statute as a whole, then, the court concludes that an award of attorney's fees, also only mentioned in § 303(i)(1), similarly was intended to be available for fees incurred throughout the entire action. The identical treatment of costs and attorney's fees in the section seems to dictate the result.[17]

Case law supports this interpretation of § 303(i). The court in *In re Advance Press & Litho, Inc.* recognized that the terms of § 303(i) do not limit recoverable attorney's fees to those incurred during the dismissal phase of a suit:

I find nothing in the Code or case authority limiting an award to the date of

---

16. Additionally, § 303(i)(1) allows a debtor to recover any damages proximately caused by a trustee's taking of possession of the debtor's property.

17. Although the court finds that § 303(i)(1)(B) *does* allow recovery of post-dismissal attorney's fees, the court believes that § 303(i)(2)(A) *does not* allow for the recovery of attorney's fees as "damages proximately caused" by the bad faith filing, in any event. This finding is consistent with the general American rule that attorney's fees are not recoverable as "damages," but rather are recoverable only if provided for by statute or contract. *See Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); 22 Am. Jur.2d Damages § 611, p. 674. Although

there are exceptions to this rule, such as a damage award in a malicious prosecution action which may include attorney's fees incurred defending the underlying maliciously brought case, even then attorney's fees incurred in bringing the action for malicious prosecution may not be recovered. *See Stewart v. Sonneborn,* 98 U.S. 187, 197, 25 L.Ed. 116 (1878); 52 Am.Jur.2d Malicious Prosecution § 98, p. 247–48. Thus, for the involuntary debtor to be "made whole," the availability of statutory attorney fees is the only route—short of, naturally, lumping them in as part of the calculation of a punitive damage award (contrary to the notion that punitive damages are meant to punish and deter, not to compensate the injured party).

dismissal. Preparation for and attendance at the hearing on attorney's fees, costs and damages are also part of the matters which are occasioned as a result of an Involuntary Petition. As such, they are compensable under § 303(i).

46 B.R. at 703. Moreover, the court in *In re Landmark Distributors, Inc.*, 195 B.R. 837, 846 (Bankr.D.N.J.1996), found that because the great proportion of attorney's fees were incurred during the damages phase of the litigation,[18] as is true in this case,[19] denying these fees would "fly in the face of legislative intent and common sense." *Id.* The large majority of cases that have addressed the issue are in line with *Advance Press* and *Landmark Distributors*, holding that the § 303(i) attorney's fee provision is not limited to fees incurred prior to the dismissal of the petition.[20] *See, e.g., In re Petrosciences Int'l, Inc.*, 96 B.R. at 665; *In re Advance Press & Litho, Inc.*, 46 B.R. at 703; *In re Atlas Mach. & Iron Works, Inc.*, 190 B.R. 796, 807 (Bankr.E.D.Va.1995); *In re Oakley Custom Homes, Inc.*, 168 B.R. 232, 242 (Bankr.D.Colo.1994); *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 907 (Bankr.

18. 87% of the total fees requested were incurred during the damages phase.

19. Approximately 75% of the total fees requested were incurred during the damages phase: Randolph Willis requested $219,111.31 for post-dismissal work (R. 31). Jan Hamilton requested a total amount of $143,775, (R. 30), of which $92,198.67 was determined by the bankruptcy judge to have been incurred during the damages phase of the case, Bankr.M & O at 23. Thus, Mr. Hamilton's bill for post-dismissal work was $51,576.33.

20. The court's research has only uncovered one case limiting the recovery of attorney's fees to the dismissal phase of the § 303 action. *See In re Pierce*, 165 B.R. 252, 256 (Bankr.N.D.Ind.1994). *Pierce* gave no analysis for reaching this conclusion. Similarly, the bankruptcy judge here did not discuss his reasoning for precluding a recovery of attorney's fees under § 303(i)(1)(B) for attorney's fees incurred in the damages phase of the case.

N.D.Ill.1994); *In re Wavelength*, 61 B.R. at 621–22.

The above analysis of the structure of the statute and case law support leads the court to reverse the bankruptcy court's denial of post-dismissal attorney's fees. Therefore, should the Tenth Circuit reverse this court's finding in Section III.B that appellant was entitled to a jury trial, the court remands this case to the bankruptcy court for a calculation of the reasonable attorney's fees incurred by appellant's attorneys post-dismissal.[21]

**E. Did the bankruptcy court err in rejecting the trial testimony of Dr. Olson?**

The final contention raised by appellant on appeal is that the bankruptcy judge erred in rejecting the trial testimony of Dr. Gerald Olson. Dr. Olson attempted to show that appellant lost earnings as a result of the filing of the involuntary petition. As noted by the bankruptcy judge, however, Dr. Olson's "summary demonstrated that Glannon actually made, on average, more income in the three years after the bankruptcy then he did in the three years before. [Dr. Olson] cautiously

21. The court notes that the appropriate method for calculating a "reasonable attorney's fee" in this case is the lodestar method. The Supreme Court has defined the "lodestar" as "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The Court has held that the lodestar governs the amount of fees to be awarded, even when a contingency-fee agreement exists between the prevailing party and his counsel. *See City of Burlington v. Dague,* 505 U.S. 557, 565–66, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *see also Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Accordingly, the court rejects appellee's argument that the bankruptcy court is not empowered to "scrap the 'four corners'" of the contingency-fee contract in assessing a reasonable attorney's fee. Appellee Response at 12.

avoided giving an opinion that the involuntary bankruptcy caused Glannon's average earnings after the bankruptcy to be lower than in the ten years before the bankruptcy." Bankr.M & O at 32. Dr. Olson's testimony "therefore fell short of convincing the Court that the involuntary has diminished Glannon's earning capacity." Bankr.M & O at 32–33. The court does not find that the bankruptcy judge abused his discretion in making this finding.

■■■■ As stated by the Kansas Supreme Court, "[i]t is a fundamental principle of law that recovery may not be had where it is not shown with reasonable certainty that damage was suffered and that such damage resulted from the act or omission complained of." *Apperson v. Security State Bank*, 215 Kan. 724, 528 P.2d 1211, 1220 (1974) (citing 25 C.J.S. Damages § 2, p. 683; 22 Am.Jur.2d Damages §§ 20, 21, p. 37–39). As appellant correctly states, this rule requires one to prove damages with reasonable certainty, not absolute certainty. *See id.* Appellant also correctly states that if "the cause and existence of damages are established with reasonable certainty, recovery will not be denied because the damages are difficult to ascertain." *Vanguard Ins. Co. v. Connett,* 270 F.2d 868, 870 (10th Cir.1959), *cited in New Dimensions Prods., Inc. v. Flambeau Corp.,* 17 Kan.App.2d 852, 844 P.2d 768, 774 (1993). Appellant's argument is that he proved the existence of lost earnings resulting from the bad faith bankruptcy filing, and the bankruptcy court therefore erred in not awarding him damages on the basis that the amount of earnings lost was speculative. The error in appellant's argument, however, is in asserting that he proved the existence of lost earnings. The court finds that the bankruptcy court did

not reach the issue of the amount of damages owed for lost earnings because the bankruptcy court did not believe to a reasonable certainty that earnings were lost. Bankr.M & O at 32–33.

The bankruptcy judge did recognize that, according to appellant's declaration, the filing of the case "impeded [appellant's] ability to devote himself to earning a living," "slander[ed] his credit," "interfered greatly with his ability to negotiate profitable enterprises," and forced him to "agree to smaller commissions in order to finalize deals." Bankr.M & O at 34. As a result, the bankruptcy judge awarded appellant $100,000 in actual damages. These same facts, however, do not equate to a finding that appellant's earning capacity was impaired. Appellant has failed to identify a nexus connecting these facts to a lower earning capacity. In fact, Dr. Olson, who presented the only evidence as to appellant's earning capacity, explained that appellant earned more, on average, in the three years after the filing of the petition than in the three years before the filing of the petition, apparently in spite of these facts. Bankr.M & O at 32. Recognizing that the bankruptcy judge was in the best position to hear and evaluate Dr. Olson's testimony, the court cannot say that the judge abused his discretion in finding that appellant had not proven lost earning capacity with reasonable certainty.[22] Therefore, the court upholds the bankruptcy court's decision with regard to this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that the bankruptcy court's determination that appellant was not entitled to a jury trial on the issue of 11 U.S.C. § 303(i) damages is reversed and the reference of this case to the bankruptcy court

---

22. Appellant also argues that uncontradicted witness testimony may not be arbitrarily rejected by the trier of fact. *Citing Stafos v. Missouri Pac. R.R. Co.,* 367 F.2d 314, 317 (10th Cir.1966); *Boston Ins. Co. v. Read,* 166 F.2d 551, 553 (10th Cir.1948). While the court agrees, it also recognizes that "[n]either should it be indolently accepted.... [T]he weight to be given to testimony of that kind is

for the court." *Read,* 166 F.2d at 553. There is no basis for the court to conclude that the bankruptcy court acted arbitrarily in rejecting Dr. Olson's ultimate opinion that appellant suffered a loss of earning capacity as a result of the bankruptcy; in his Memorandum Opinion, the bankruptcy judge addressed Dr. Olson's testimony and discussed reasons why he was not convinced by it. Bankr.M & O at 32.

897

is withdrawn. This case will be randomly reassigned in the district court for the purpose of conducting a jury trial.

**IT IS FURTHER ORDERED** that, should the Tenth Circuit reverse this court's finding that appellant is entitled to a jury trial, the case is remanded to the bankruptcy court for a determination of reasonable attorney's fees incurred by appellant's attorneys during the damages phase of the case.

**IT IS FURTHER ORDERED** that the following determinations of the bankruptcy court are affirmed: (1) the bankruptcy court had subject matter jurisdiction to determine the damages phase of the proceeding, (2) attorneys of petitioning creditors may not be held liable under 11 U.S.C. § 303(i), and (3) the trial testimony of Dr. Olson did not support an award for loss of earnings capacity.

**IT IS SO ORDERED.**