# United States Court of Appeals

## For the First Circuit

No. 02-2483

GOYA FOODS, INC.,
Petitioner, Appellee,

v.

WALLACK MANAGEMENT CO. ET AL.,
Respondents, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Selya, Circuit Judge,
Stapleton,* Senior Circuit Judge,
and Howard, Circuit Judge.

H. Peter Haveles, Jr., with whom Douglas Koff and Cadwalader,
Wickersham & Taft LLP were on brief, for appellant Rennert.
Stuart W. Berg and Brown Raysman Millstein Felder & Steiner
LLP on brief for corporate appellants.
Ira Brad Matetsky, with whom Arturo J. García-Solá and
McConnell Valdés were on brief, for appellee.

September 8, 2003

---

*Of the Third Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  In this appeal, we revisit a contempt sanction imposed by the United States District Court for the District of Puerto Rico.  By way of prelusion, we offer here only a sketch of antecedent events.  The reader who hungers for more intimate familiarity with the facts should consult our last previous opinion in this matter.  See Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 67-70 (1st Cir. 2002) (Goya I) (cataloguing other reported cases and summarizing the thirty-year history of this seemingly interminable intrafamilial dispute).

The tale began in 1969, when Charles Unanue was ousted from the family business, Goya Foods, Inc. (Goya).  He later accepted a settlement of $4,400,000 in exchange, inter alia, for his promise that he would neither contest his father's will nor file a claim against his father's estate.  When the family patriarch died, however, Charles broke this promise.  The contest that he mounted in 1976 boomeranged:  after prolonged litigation in the New Jersey state courts, Goya obtained a judgment against him in the approximate amount of $6,900,000.

Charles Unanue then contrived a series of gambits designed to shield his assets from this judgment.  These machinations included a sham bankruptcy, numerous attempts to conceal assets, and the creation of a fictitious investor.  Even while interest was accruing on the New Jersey judgment, Goya persisted in its efforts to enforce that judgment.  It eventually

-2-

sued Charles Unanue and his wife, Liliane, in Puerto Rico's federal district court, seeking to reach and apply an assortment of assets that had been placed in Liliane's name. In 1995, the district court issued a provisional order prohibiting the alienation of these holdings (including Liliane's shares in a luxurious cooperative apartment complex located at 625 Park Avenue in Manhattan).

Goya promptly notified respondent-appellant 625 Park Corp. and respondent-appellant Wallack Management Co. (the building's owner and managing agent, respectively) of the provisional order. In 1997, the court entered judgment in Goya's favor but stayed execution of the judgment pending appellate review. Goya Foods, Inc. v. Unanue-Casal, 982 F. Supp. 103, 112 (D.P.R. 1997). Goya notified the corporate appellants of the district court's decision and requested that it be told before any disposition was made of the Unanues' interest in the apartment.

The notices went unheeded. On June 19, 1998, Liliane sold the cooperative shares (and, thus, the apartment) to respondent-appellant Ira Leon Rennert for $4,600,000. The appellants acted in concert: Rennert closed despite knowing of the provisional order and the ensuing district court decision, and both Wallack Management and 625 Park took steps to facilitate the transaction. Liliane and Charles lost little time in absconding with the net proceeds.

Goya did not learn of the sale until October of 2000. It quickly asked the district court for assistance. The court dissolved the stay of execution.[1] It thereafter held the appellants in civil contempt, imposing a joint and several sanction of approximately $6,000,000 (comprising $4,600,000 on account of the sale price and roughly $1,400,000 in prejudgment interest). Goya Foods, Inc. v. Unanue-Casal, 141 F. Supp. 2d 207, 224 (D.P.R. 2001), supplemented by Goya Foods, Inc. v. Unanue-Casal, Civ. No. 95-2411, slip op. (D.P.R. Oct. 5, 2001) (unpublished). We affirmed the finding of contempt but vacated the award because the district court had considered itself bound to follow 32 P.R. Laws Ann. App. III, R. 44.3, and, thus, erroneously had deemed Goya entitled to prejudgment interest as a matter of law. Goya I, 290 F.3d at 79-80. We explained that "when a federal district court sits in diversity jurisdiction, its inherent power to impose monetary sanctions for contumacious conduct during the course of litigation is not circumscribed by the forum state's law regarding the imposition of sanctions." Id. at 80. To correct this error, we remanded for reconsideration of the amount of the sanction, making clear that the lower court's options ranged from including no prejudgment interest component in the sanction to including any reasonable amount as a proxy for the time value of money. Id. If

[1]On November 28, 2000 — a few weeks after Goya sought the district court's intervention — we affirmed the 1997 judgment. See Goya Foods, Inc. v. Unanue, 233 F.3d 38, 48 (1st Cir. 2000).

-4-

the district court elected to follow the latter course, it was free to "draw[] upon any reasonable statutory benchmark (state or federal) to set an appropriate rate." Id. at 79 n.9.

On remand, the district court noted the breadth of its inherent authority, concluded that the sanction should include a prejudgment interest component, and stated with little ceremony that "taking into consideration the idiosyncrasies of this case," Puerto Rico's statutory interest rate (10.5%) constituted an appropriate measure. Goya Foods, Inc. v. Unanue-Casal, Civ. No. 95-2411, slip op. at 2 (D.P.R. Sept. 25, 2002) (unpublished). On this basis, the court reimposed the original $6,000,000 sanction, which included a $1,400,000 prejudgment interest component representing simple interest at the rate of 10.5% per annum on the sale price of the cooperative shares for the period from June 19, 1998 (the date when the sale occurred) to May 11, 2001 (the date when Rennert deposited an amount equal to the sale price in the registry of the district court). This appeal ensued.

The appellants complain variously that (1) the district court should have made specific findings as to whether and to what extent Goya suffered an actual loss, above and beyond the sale price of the cooperative shares, deriving from their contumacious conduct; (2) the court's use of a 10.5% interest rate overcompensated Goya; and (3) in all events, the court should not have included prejudgment interest for the period between the date

-5-

of sale and the date on which we affirmed the right to levy on assets standing in Liliane Unanue's name, see supra note 1. As we shall explain, these arguments are unavailing (and, for the most part, misguided).

We review a trial court's decision as to the amount of a monetary sanction only for abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991); Goya I, 290 F.3d at 77-78; Johnson v. A.W. Chesterton Co., 18 F.3d 1362, 1366 (7th Cir. 1994). This is a deferential standard, and a party who seeks to overturn a monetary sanction on grounds of excessiveness bears a heavy burden. See Jones v. Winnepesaukee Realty, 990 F.2d 1, 5 (1st Cir. 1993); see also Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir. 1990) (explaining that "the imposition of sanctions is essentially a judgment call, and as such, seems best left to the judicial officer most familiar with the case") (citation and internal quotation marks omitted). Of course, trial courts do not have unbridled license to pluck dollar figures out of thin air and incorporate them in sanctions. See Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764-65 (1980); Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426-27 (1st Cir. 1992). But mathematical exactitude is not required: so long as a sanction is reasonably proportionate to the offending conduct, the trial court's quantification of it ought not to be disturbed. United States v. United Mine Workers, 330 U.S.

-6-

258, 303 (1947); <u>Long</u> v. <u>Steepro</u>, 213 F.3d 983, 986 (7th Cir. 2000); <u>Navarro-Ayala</u>, 968 F.2d at 1426-27.

In this case, the lower court acted well within the scope of its authority. Contrary to the appellants' importunings, it was not necessary either for Goya to prove the <u>actual</u> time value of the wrongfully withheld funds or for the court to make specific findings derived from admissible evidence. It suffices if, on whole-record review, the sanction appears reasonable in amount and the rationale behind it is evident. <u>Foval</u> v. <u>First Nat'l Bank of Commerce</u>, 841 F.2d 126, 130 (5th Cir. 1988).

The sanction in this case easily passes through that screen. The first time around, the district court made pellucid the basis for the sanction, the algorithm by which it had calculated the amount, and the reasoning that drove the decision. We approved the sanction in every particular save only the court's erroneous assumption that it was bound by Puerto Rico law to include a prejudgment interest component. <u>Goya I</u>, 290 F.3d at 77-79. The second time around, nothing changed except that the court, freed from the imagined constraints of its earlier assumption, elected as a matter of discretion to include a prejudgment interest component in the overall sanction and to peg that component to the statutory interest rate prescribed by local law. The basis for the court's action was crystal clear; more specific findings were not required.

The appellants' second argument need not detain us. Their determined assault on the district court's appointed interest rate is little more than whistling past the graveyard. In essence, they claim that the 10.5% rate yields more interest than Goya conceivably could have earned, considering the performance in the relevant time frame of the New York Stock Exchange, the Manhattan real estate market, treasury bills, and the like. But this appeal revolves around the propriety of a sanction, not around the pinpoint accuracy of an award for economic loss. Goya's actual loss is not the issue. We explain briefly.

In crafting a monetary sanction, a court must bear in mind not only the factual circumstances of the particular case but also the purpose for imposing the sanction in the first place. See Navarro-Ayala, 968 F.2d at 1426-27 (collecting cases); Willy v. Coastal Corp., 915 F.2d 965, 968 (5th Cir. 1990). Because one purpose behind such a sanction is to compensate the aggrieved party for harm suffered in consequence of the sanctioned party's acts, United Mine Workers, 330 U.S. at 304, the sanction "must bear a reasonable relationship to the actual losses sustained by the injured party." Goya I, 290 F.3d at 78. This does not mean, however, that compensation is the only factor the ordering court can consider. The opposite is true. Chambers, 501 U.S. at 53-54 & n.15; Hutto v. Finney, 437 U.S. 678, 691 n.17 (1978).

-8-

Sanctions stem, in part, from a need to regulate conduct during litigation. Chambers, 501 U.S. at 53. Thus, a sanction may properly have a punitive aspect. See id. Similarly, deterrence may be considered in fixing the amount of a monetary sanction. See United Mine Workers, 330 U.S. at 303; Jones, 990 F.2d at 6. Given these multiple purposes, a monetary sanction need not be perfectly commensurate, dollar for dollar, with the aggrieved party's actual loss. See United States v. Kouri-Perez, 187 F.3d 1, 6 n.2, 10 (1st Cir. 1999); United States v. Marquardo, 149 F.3d 36, 40 (1st Cir. 1998); see also Media Duplic. Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1242 (1st Cir. 1991) (applying this principle to Rule 16(f) sanctions).

In this case, we previously ruled that the district court had discretion to include a prejudgment interest component in the monetary sanction. Goya I, 290 F.3d at 80. We now hold that the court acted within the realm of its discretion in settling upon the statutory 10.5% rate as a basis for calculating that component. For one thing, the appellants' contumacious conduct rendered it impossible to determine with certainty what rate of return Goya would have earned on the sale proceeds. In fairness, then, doubts ought to be resolved against the contemnors. With that in mind, the statutory rate represented an equitable estimate.[2] See

_____

[2]Indeed, our earlier opinion invited the district court, if it decided to include an interest component, to "draw[] upon any reasonable statutory benchmark (state or federal)" in choosing an

Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996) (noting that a statutory interest rate "is an objective measure of the value of money over time"). For another thing, the appellants' conduct was egregious, see Goya I, 290 F.3d at 75-77, and the district court reasonably could have believed that punishment and the need to deter others called for generosity. See Chambers, 501 U.S. at 56-57; Fox v. Acadia State Bank, 937 F.2d 1566, 1571 (11th Cir. 1991) (per curiam).

The appellants' final argument also lacks force. The record reveals an adequate basis for the district court's decision to start the interest accrual clock on the date of the sale rather than on the date that we affirmed the reach-and-apply judgment. The appellants committed the contempt at the moment that Rennert purchased the cooperative shares. Had they first notified the district court, the court would have been able to protect Goya's interests by, say, blocking the sale altogether (thus securing for the putative creditor the future appreciation in the value of the apartment) or ordering the sale proceeds deposited in the registry of the court (thus earning interest from that time forward). Given these realities, the appellants cannot now be heard to complain about the court's decision to treat the closing date as the starting point for the accrual of interest.

---

interest rate. Goya I, 290 F.3d at 79 n.9.

We need go no further. A trial court's power to assert its authority over a contemnor is broad. When the court orders the contemnor to purge the contempt by paying a monetary sanction, a reviewing court must tread lightly. <u>Chambers</u>, 501 U.S. at 55. In this case, the court below fashioned a condign sanction that was in reasonable proportion to the facts before it. The sanction must, therefore, stand.

**<u>Affirmed</u>**.