NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0993n.06
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Nov 20, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: JOHN RICHARDS HOMES BUILDING COMPANY, L.L.C., | ) ) | |
| -Debtor. | ) ) ) | |
| KEVIN ADELL, | ) ) ) | |
| -Appellee/Cross-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| JOHN RICHARDS HOMES BUILDING COMPANY, L.L.C., | ) ) ) | |
| -Appellant/Cross-Appellee, | ) ) | |
| and | ) | OPINION |
| HONIGMAN, MILLER, SCHWARTZ & COHN LLP, | ) ) ) ) | |
| -Appellee. | ) | |

Before: **ROGERS, STRANCH, and DONALD, Circuit Judges.**

**BERNICE B. DONALD, Circuit Judge.** The parties, Kevin Adell and John Richards

Homes Building Co., cross-appeal the district court's decision affirming in part and reversing in part

an order of the bankruptcy court. The bankruptcy court's order granted counsel for the alleged

debtor, John Richards Homes Building Co., $1,854,192.73 in attorney's fees for costs incurred

enforcing a 2003 judgment of the bankruptcy court pursuant to 11 U.S.C. § 303(i) and, pursuant to

both 11 U.S.C. § 105 and the court's inherent power, assessed $2.8 million in punitive damages

against Adell, the creditor who filed the initial involuntary bankruptcy petition, for his

post-judgment conduct. The district court affirmed the attorney's fee award but reversed the

punitive damages award. For the reasons that follow, we AFFIRM the judgment of the district court.

I.

This appeal marks the second time these parties, John Richards Homes Building Co., L.L.C.

("JRH") and Kevin Adell ("Adell"), have come before this Court over the course of an acrimonious

eleven-year dispute that has been litigated, at various times, in seven different federal courts and two

different state court systems.[1] Accordingly, this section begins with the facts as described by this

Court in the prior appeal, supplemented by a description of the parties' conduct in the Florida

litigation that followed the 2003 judgment of the bankruptcy court and the litigation that led to the

instant appeal.

In *Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co.,*

*L.L.C.*) ("*In re JRH I*"), 439 F.3d 248 (6th Cir. 2006), this Court summarized the initial factual

background of the litigation in the bankruptcy court as follows:

---

[1]The federal courts are as follows: the Supreme Court of the United States, the Eastern District of Michigan Bankruptcy Court, the District Court for the Eastern District of Michigan, the Sixth Circuit Court of Appeals, the Middle District of Florida Bankruptcy Court, the District Court for the Middle District of Florida, and the Eleventh Circuit Court of Appeals. There were also lawsuits filed in the Michigan and Florida state courts.

As the bankruptcy court found, in December 2001, Adell and JRH entered into a Residential Building and Purchase Agreement whereby JRH, in exchange for $3,030,000, agreed to sell Adell a 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to construct a home for Adell on the property, with construction to begin "within a reasonable time after the completion of building plans and issuance of permits." On February 28, 2002, the deal closed. The closing documents allocated $1,750,000 out of the $3,030,000 for the land purchase.

Over the next few months, Adell's relationship with JRH and its principal, John Shekerjian, soured. . . . He told Shekerjian that he wanted another builder to build his house and, apparently, barred JRH from the property. He also became upset about the amount he had paid for the land, contending that it was only worth $1 million instead of $1.75 million.

On June 6, 2002, after a number of conversations, meetings, letters and other interactions between Adell or his representatives and JRH or its representatives, Adell filed a civil suit against JRH and Shekerjian in the Oakland County Circuit Court. The complaint included a number of claims, all of which essentially rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable." On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified counter-complaint.

. . .

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently

filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH was an entity with 12 or more creditors. Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(i). On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss. Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

> The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor . . . [and] . . . that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], . . . such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract. There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative creditors. Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's [§ 303(i)] motion on April 25, 2003. In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68.

Adell appealed to the district court. On August 5, 2004, in another thorough opinion, the district court ratified the bankruptcy court decision.

*Id.* at 252-54 (citations omitted).

While Adell's direct appeals were pending in the District Court for the Eastern District of

Michigan and this Court, he liquidated his assets in Michigan and used the proceeds to purchase a

$2.8 million home in Florida in order to take advantage of that State's unlimited homestead exemption. *In re John Richards Homes Bldg. Co, L.L.C.* ("*In re JRH II*"), 405 B.R. 192, 203 (E.D. Mich. 2009). Adell admitted under oath that he took this action in order to protect his assets. *In re John Richards Homes Builders Co., L.L.C.* ("*In re JRH III*"), 461 B.R. 1, 19 (Bankr. E.D. Mich. 2011). JRH continued its efforts to collect on the bankruptcy court's $6.4 million judgment, but in November of 2003 Adell filed for bankruptcy in Florida, invoking the automatic stay. *In re JRH II*, 405 B.R. at 204. The parties then litigated various aspects of that bankruptcy filing in the Florida federal courts for the next four years. *See id.* at 204-07.

After this Court affirmed the initial Michigan bankruptcy court judgment on the involuntary petition on March 1, 2006, Adell paid the $6.4 million judgment in full on April 3, 2006. *In re JRH II*, 405 B.R. at 206. Subsequently, on April 21, 2006, Honigman, Miller, Schwartz, & Cohn ("HMSC"), counsel for JRH, filed two motions in the Eastern District of Michigan Bankruptcy Court: one for additional punitive damages and a "Second Application for Compensation of Attorney Fees and Expenses" seeking an additional $2 million in fees and costs—mostly incurred during the Florida litigation—under 11 U.S.C. § 303(i). *Id.* at 207. The bankruptcy court initially denied this fee application, holding that it could not make such an award in light of a split of authority on the issue of "whether § 303(i) authorizes the bankruptcy court to award fees and costs beyond those directly incurred in defending the involuntary petition." *Id.* at 208. JRH appealed to the district court, and the district court reversed and remanded. *Id.* at 201.

On remand, the bankruptcy court entered the order at issue in this appeal, granting JRH's second motion for attorney's fees and motion for additional punitive damages. *See In re JRH III*, 461 B.R. at 14, 22. The bankruptcy court awarded JRH $1,854,192.73 in attorney's fees and $2.8 million in punitive damages. *Id.* Adell appealed to the district court, which affirmed the award of attorney's fees and reversed the award of punitive damages. (PageID 9308.) Both parties timely appealed to this Court. (Page ID 9338, 9373.)

II.

A.

When we confront an appeal that originated in bankruptcy court, our review takes a different form than an appeal that originated in district court. *See Alfes v. Educ. Credit Mgmt. Corp.* (*In re Alfes*), 709 F.3d 631, 636 (6th Cir. 2013). "We evaluate the bankruptcy court decision directly, without being bound by the district court's determinations, and conduct an independent examination of the record." *In re JRH I*, 439 F.3d at 254. This Court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Hills v. McDermott* (*In re Wicker*), 702 F.3d 874, 877 (6th Cir. 2012). "We will not disturb the bankruptcy court's findings of fact unless there is the 'most cogent evidence of mistake of justice.'" *WesBanco Bank of Barnesville, Ohio v. Rafoth* (*In re Baker & Getty Fin. Servs. Inc.*), 106 F.3d 1255, 1259 (6th Cir. 1997) (quoting *Newton v. Johnson* (*In re Edward M. Johnson & Assocs., Inc.*), 845 F.2d 1395, 1401 (6th Cir. 1988)). The issue of whether bankruptcy courts have the authority to impose punitive damages under 11 U.S.C.

§ 105(a) or by invoking their inherent authority is a question of law that we therefore review de novo. *See Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010); *Walters v. Webre* (*In re Webre*), 88 B.R. 242, 244 (B.A.P. 9th Cir. 1988).

Additionally, because Adell has not argued that the bankruptcy court's award of punitive damages violates the United States Constitution, we review both the assessment of and amount of punitive damages for abuse of discretion. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 433 (2001) ("If no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's 'determination under an abuse-of-discretion standard.'" (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989))). This Court also reviews for abuse of discretion both a lower court's award of sanctions under 11 U.S.C. § 105(a), *Henderson v. Kisseberth* (*In re Kisseberth*), 273 F.3d 714, 721 (6th Cir. 2001), and any award of sanctions pursuant to the lower court's inherent authority as recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs. Inc.)*, 227 F.3d 604, 608 (6th Cir. 2000). A lower court thus abuses its discretion "when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly

erroneous findings of fact." *Auletta v. Ortino* (*In re Ferro Corp. Derivative Litig.*), 511 F.3d 611, 623 (6th Cir. 2008).

B.

Section 303 of the Bankruptcy Code allows a group of creditors to file an "involuntary case," also known as an involuntary petition, against an alleged debtor and bring her into bankruptcy court. 11 U.S.C. § 303(a)-(b). In subsection (i), the statute provides a remedy for alleged debtors in the event that an involuntary petition is dismissed "other than on consent of all petitioners and the debtor." *Id.* § 303(i). That remedy gives the court discretion to grant judgment: "(1) against the petitioners and in favor of the debtor for--(A) costs; or (B) a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for--(A) any damages proximately caused by such filing; or (B) punitive damages." *Id.*

This appeal requires us to answer the following question: does § 303(i) permit a bankruptcy court to award costs and attorney's fees when those fees were incurred in collateral proceedings after dismissal of the underlying involuntary petition? Because this portion of the appeal presents a pure question of law, our review is de novo. *In re Wicker*, 702 F.3d at 877; *see also United States v. Shafer*, 573 F.3d 267, 272 (6th Cir. 2009) ("A matter requiring statutory interpretation is a question of law requiring *de novo* review . . . ." (internal quotation marks omitted)).

1.

The starting point for any exercise in statutory interpretation is the language of the statute itself. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)) (internal quotation marks omitted). The Supreme Court of the United States has given the lower federal courts some specific guidance on interpreting the Bankruptcy Code. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235 (1989) (interpreting § 506 of the Bankruptcy Code). In *Ron Pair*, the Supreme Court cautioned that "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)) (second alteration in original) (internal quotation marks omitted). If "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* at 241 (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)) (internal quotation marks omitted).

The particular dispute at this point concerns whether § 303(i) permits a bankruptcy court to award fees for services rendered in collateral proceedings after dismissal of the underlying involuntary petition. The language of § 303(i) clearly authorizes the bankruptcy court to award costs and fees to a prevailing alleged debtor for defending against an involuntary case up to the time of the petition's dismissal: "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, . . . the court may grant judgment . . . in favor of the debtor for costs or a reasonable attorney's fee." 11 U.S.C. § 303(i). The statute is ambiguous, however, with respect

to the award of attorney's fees for post-dismissal expenses in collateral litigation. This ambiguity

arises because the statute is silent as to the issues of timing and location of awards of attorney's fees;

§ 303(i) does not expressly allow or prohibit a bankruptcy court from awarding fees beyond those

directly incurred by the debtor in defending against the involuntary petition in bankruptcy court,

such as fees incurred defending appeals and in collateral proceedings. *See id.*

The existence of ambiguity in § 303(i) is bolstered by the split of authority among the federal

courts as to whether the statute permits awards of post-dismissal costs and fees. *See In re JRH II*,

405 B.R. at 212-15 (examining the conflicting federal cases). Some federal courts have reasoned

that, because the great majority of legal expenses could be incurred following the dismissal of the

involuntary petition, it would "fly in the face of legislative intent and common sense" for the

Bankruptcy Code not to have authorized post-dismissal fees pursuant to § 303(i). *Glannon v.*

*Carpenter* (*In re Glannon*), 245 B.R. 882, 895 (D. Kan. 2000) (quoting *In re Landmark Distrib.,*

*Inc.*, 195 B.R. 837, 846 (Bankr. D. N.J. 1996)) (internal quotation marks omitted). Other federal

courts have reasoned that the Federal Rules of Appellate Procedure provide their own mechanism

for awarding single or double costs to an appellee if an appellant pursues a frivolous appeal from

the dismissal of an involuntary petition. *In re Law Center*, 304 B.R. 136, 139 (Bankr. M.D. Penn.

2003) (relying on *In re Allen-Main Assocs., Ltd. P'ship*, 229 B.R. 577, 578 (Bankr. D. Conn. 1999)).

*In re Landmark Distributors* represents one of the well-reasoned cases holding that § 303(i)

permits a bankruptcy court to award attorney's fees for expenses incurred after the dismissal of an

involuntary petition. *In re Landmark Distrib., Inc.*, 195 B.R. 837. In *Landmark*, three creditors filed an involuntary petition against Landmark Distributors, Inc. *Id.* at 839. After a four-day trial, the bankruptcy court dismissed the involuntary petition. *Id.* at 840. The district court affirmed that initial holding, and then the parties began litigating "the issue of Landmark's entitlement to an award of damages in the context of a dismissed involuntary proceeding pursuant to 11 U.S.C. § 303(i)." *Id.* After a twenty-four day trial on that issue, the bankruptcy court awarded Landmark $3.2 million in compensatory damages, $500,000 in punitive damages, and reasonable costs and attorney's fees. *Id.* The litigation continued as Landmark's attorneys prepared and submitted their fee applications and the creditors filed objections. *Id.* at 840-45. The bankruptcy court overruled the creditors' objection that "only those fees and costs that were incurred in connection with the dismissal aspect of these proceedings are subject to being assessed, not those relating to the bad faith and damages aspect of these proceedings." *Id.* at 842, 845.

In overruling the creditors' objections, the bankruptcy court reasoned that it "would fly in the face of legislative intent and common sense" to deny the fees requested for the damages phase of the case. *Id.* There was "nothing in the Code or case authority limiting an award to the date of dismissal," *id.* (quoting *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (D. Colo. 1984)) (internal quotation marks omitted), and, due to the length of the damages trial, approximately 87% of the fees requested were incurred after the dismissal of the involuntary petition. *Id.* The bankruptcy court's reasoning also took into account that Landmark was "truly a case of first reported impression, not only insofar as the filing of an involuntary petition in extreme bad faith

caused the alleged debtor's financial demise, but because the compensatory and punitive damages award under § 303(i) totaled in the millions." *Id.* This case stands out among the persuasive authorities given its striking similarity to the facts of JRH's initial dispute with Adell in bankruptcy court.

The leading case holding that § 303(i) does not permit a bankruptcy court to award attorney's fees for expenses incurred after dismissal of an involuntary petition is the Ninth Circuit's decision in *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701 (9th Cir. 2004). In *Higgins*, several creditors, including Higgins, filed an involuntary petition against Vortex Fishing Systems, Inc. *Id.* at 704-05. After trial, the bankruptcy court dismissed the petition. *Id.* at 705. The Ninth Circuit ultimately affirmed the bankruptcy court's order. *Id.* Vortex then filed a motion for attorney's fees and costs pursuant to § 303(i). *Id.* The bankruptcy court granted that motion on summary judgment, and the United States District Court for the District of Arizona affirmed on appeal. *Id.* The creditors then took their case back to the Ninth Circuit. *Id.*

Although the Ninth Circuit affirmed the bankruptcy court's grant of summary judgment "on the issue of *initial* litigation attorney's fees and costs pursuant to § 303(i)," it reached a different conclusion regarding "the portion of the bankruptcy court's award . . . of fees and costs *attributable to the appeals process*." *Id.* at 708 (emphasis added). The Ninth Circuit reasoned that Rule 38 of the Federal Rules of Appellate Procedure provides the "only authority for awarding discretionary appellate fees in bankruptcy appeals," and that "we should not infer from a bankruptcy court's

express discretionary authority to award fees at the trial court level a similar authority to award fees at the appellate level." *Id.* (quoting *State of Cal. Emp't Dev. Dep't v. Taxel* (*In re Del Mission, Ltd.*), 98 F.3d 1147, 1154 (9th Cir. 1996)) (internal quotation marks and alterations omitted).

The Ninth's Circuit's decision in *Higgins*, however, suffers from a crucial flaw:  the opinion relied on previous Ninth Circuit holdings from *Vasseli v. Wells Fargo Bank, National Association* (*In re Vasseli*), 5 F.3d 351 (9th Cir. 1993), and *In re Del Mission*, 98 F.3d 1147, which addressed §§ 523(d)[2] and 105(a) of the Bankruptcy Code, not § 303(i).  Section 303(i)'s standard for the assessment of fees is quite different from the standards embodied in Rule 38 and § 523(d).  Rule 38 requires that the appeal be "frivolous" before an appellate court is authorized to award single or double costs to an appellee.  Fed. R. App. P. 38.  Section 523(d) requires that the court find "that the position of the creditor was not substantially justified," and prevents the court from awarding fees "if special circumstances would make the award unjust."  11 U.S.C. § 523(d).  In contrast, the Ninth Circuit recognized the following in *Higgins* concerning awards of fees under § 303(i):

> The plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1): 1) the court must have dismissed the petition on some ground other than consent by the parties; and 2) the debtor must not have waived its right to recovery under the statute.

---

[2]Section 523(d) provides:
If a creditor requests a determination of dischargeability of a consumer debt . . . and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

*Higgins*, 379 F.3d at 705. *Higgins* did not explain why §§ 523(d), 105(a), and 303(i) should be similarly limited. Rather, the Ninth Circuit considered itself bound to deny the award of appellate attorney's fees under § 303(i) because of the broad holding in *In re Del Mission*, which addressed bankruptcy courts generally. We have no such limiting precedent in this Circuit.

Another flaw in *Higgins* is that it frustrates the plain intent of Congress to provide a complete remedy for debtors who successfully defend against an involuntary petition. The Ninth Circuit's opinion explicitly acknowledges this problem:

> This holding creates a discrepancy that only Congress can rectify. Despite Congress's clear intent to award attorney's fees and costs to an alleged debtor who successfully defends an involuntary bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38.

*Id.* at 709 n.3. Adell argues, primarily based on *Higgins*, that a "broad construction [of § 303(i) to include fees incurred after dismissal] would conflict with the prerogative of other courts to regulate their own proceedings through an award of attorneys' fees for conduct occurring before them." Appellee Br. at 31. This argument, however, fails to recognize the distinct standards outlined above for the award of fees under different provisions of the Bankruptcy Code and the Federal Rules of Appellate Procedure. It "is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they . . . created." *In re Advance Press*, 46 B.R. at 702. This congressional intent exists irrespective of the availability

of costs and fees under other provisions of the Bankruptcy Code or the Federal Rules of Appellate

Procedure.

The Supreme Court's decision in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384

(1990)—cited by Adell for support in his brief—is not to the contrary. In *Cooter & Gell*, the

Supreme Court considered the propriety of awarding appellate costs as *sanctions* under Federal Rule

of Civil Procedure 11. *Id.* at 405-09. The Supreme Court's holding that Rule 11 does not authorize

such awards derived, in the first instance, from Federal Rule of Civil Procedure 1's limitation "that

the Rules only 'govern the procedure in the United States district courts.'" *Id.* at 406 (quoting Fed.

R. Civ. P. 1). The Supreme Court also read Rule 11 in harmony with Federal Rule of Appellate

Procedure 38 because it wished to "avoid th[e] somewhat anomalous result" of giving "a district

court the authority to award attorney's fees to the appellee even when the appeal would not be

sanctioned under the appellate rules." *Id.* at 407.

But *Cooter & Gell* is distinguishable because, unlike the Federal Rules of Civil Procedure,

§ 303(i) does not explicitly state that it only applies to proceedings in bankruptcy courts. As

discussed above, § 303(i) reflects congressional intent to make even creditors who file an

involuntary petition in good faith and commit no misconduct before the court "pay for the burden

they . . . created" by filing the petition if it is dismissed other than by consent of all the parties. *In

re Advance Press*, 46 B.R. at 702.

Adell also argues that the literal language of § 303(i), which authorizes "a reasonable attorney's fee" in the singular, should prevent the bankruptcy court from making a second award of costs and fees. This reading of the statute would produce, however, exactly the kind of result *Griffin* cautions the federal courts to avoid: one "demonstrably at odds with the intentions of [the statute's] drafters." *Griffin*, 458 U.S. at 571. Construing § 303(i) to authorize awards of post-dismissal fees is, therefore, the approach most faithful to legislative intent.

Accordingly, § 303(i) authorizes bankruptcy courts to award fees and costs for services rendered after an involuntary petition has been dismissed. *See In re Landmark*, 195 B.R. at 846. Our holding recognizes that filing of an involuntary petition "leaves a permanent scar, even if promptly dismissed," *In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981), and prevents debtors from "remain[ing] exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38." *Higgins*, 379 F.3d at 709 n.3.

2.

In ruling that "a bankruptcy court may award attorney fees and costs in post-judgment proceedings under § 303(i) for time spent litigating in collateral proceedings in other forums," (PageID 9330), the district court drew an analogy between § 303(i) and the fee-shifting provision of 42 U.S.C. § 1988(b).[3] (PageID 9326-30.) Several federal courts, including this Court, have

_____

[3]Section 1988(b) provides in pertinent part:
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the

allowed prevailing parties within the meaning of § 1988 to collect attorney's fees for litigation conducted in collateral fora. *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979) ("We conclude that implementation of Congressional policy requires the awarding of attorney's fees for time spent pursuing attorney's fees in the cases presently under review. This award should also include amounts for legal time spent defending and prosecuting the instant appeals."). Those courts allow such fee awards despite the fact that § 1988—like § 303(i)—does not explicitly authorize fee awards for work performed in collateral proceedings. *See* 42 U.S.C. § 1988(b).

*Balark v. Curtin* is a representative example of these cases and bears some resemblance to the facts of the instant appeal. 655 F.2d 798 (7th Cir. 1981). In *Balark*, the plaintiff, Bertha Balark, had become a judgment creditor of the defendants, six City of Chicago police officers, after winning her 42 U.S.C. § 1983 claim against them. *Id.* at 799. A year after that judgment was entered, Balark "returned to federal court to collect her judgment by garnishing the wages of the defendants." *Id.* at 800. After winning this garnishment action, Balark sought attorneys fees under § 1988(b). *Id.* The district court denied her motion for fees, and Balark appealed. *Id.*

---

Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

Relying on its decision in *Bond v. Stanton*, where that court held attorneys are generally

entitled to collect fees "incurred in litigating and establishing their entitlement to fees" under §

1988(b), 630 F.2d 1231, 1235 (7th Cir. 1980), the Seventh Circuit reasoned:

> Plaintiff seeks fees for her efforts to collect the judgment awarded her in her
> successful action under the civil rights laws. Congress has determined that
> attorneys' fees are necessary to fulfill the purposes of the civil rights laws by
> transferring the costs of litigation to those who infringe upon basic civil rights. The
> compensatory goals of the civil rights laws would thus be undermined if fees were
> not also available when defendants oppose the collection of civil rights judgments.
> An award of compensation for injuries sustained as a result of unconstitutional state
> action would be "diluted" if fees were denied to plaintiffs required to contest
> substantial efforts to resist or obstruct the collection of civil rights judgments. The
> victory would be hollow if plaintiffs were left with a paper judgment not negotiable
> into cash except by undertaking burdensome and uncompensated litigation.

*Balark*, 655 F.2d at 803 (citations omitted). This reasoning is applicable to the fee-shifting provision

of § 303(i) and the effort required of JRH "to contest substantial efforts [of Adell] to resist or

obstruct the collection of" the bankruptcy court's 2003 judgment. *Id.*

In enacting § 303(i), Congress determined that "there would be situations where the burdens

imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay

for the burden they . . . created." *In re Advance Press*, 46 B.R. at 702. The compensatory goals

underlying § 303(i) would thus be "undermined if fees were not also available when [creditors]

oppose the collection of" bankruptcy court judgments dismissing involuntary petitions. *See Balark*,

655 F.2d at 803. This is especially true in the context of the involuntary petition where the filing

"leaves a permanent scar, even if promptly dismissed." *In re SBA Factors*, 13 B.R. at 101. The

bankruptcy court's 2003 judgment for over $6 million against Adell, including $2 million worth of

punitive damages, would likewise have been diluted—or even rendered a nullity—if JRH had not taken on the burdensome task of contesting Adell's Florida bankruptcy filing.

Our reasoning here does not suffer from the same defect as the Ninth Circuit's in *Higgins.* While *Higgins* was bound by cases that did not allow awards of attorney's fees because Rule 38 already provides a procedure for awarding fees in frivolous appeals, § 303(i) is concerned with bad faith, rather than simply frivolous, litigation. Given the similar concern and congressional intent behind § 1988 and § 303(i), it is consistent with congressional intent to apply the principles underlying § 1988 to § 303(i).

Accordingly, § 303(i) authorizes bankruptcy courts to award fees for services rendered in direct appeals and in collateral proceedings enforcing a judgment after the dismissal of an involuntary petition. The bankruptcy court, therefore, did not err when it awarded HMSC $1,854,192.73 in fees.

## III.

On October 27, 2011, the bankruptcy court issued its ruling on JRH's "Motion for Assessment of Additional Punitive Damages Based on Post-Award Conduct." *See In re JRH III*, 461 B.R. at 15. The motion sought "an award of sanctions for Adell's continuing pattern of abuse of the judicial process in evading the § 303(i) judgment." *Id.* at 14. JRH requested these sanctions under both § 105 of the Bankruptcy Code and the bankruptcy court's inherent power. *Id.*

JRH alleged, and the bankruptcy court found, that the following facts supported a second award of sanctions against Adell:

> 1. Adell's perjury in repeatedly testifying in objection to JRH's request for an order requiring the sale of his new home in Florida that he had become a resident of Florida, which was the basis of his claim that he was entitled to the Florida homestead exemption.
>
> 2. Adell's active participation with STN.com and Adell Broadcasting Corp. in evading the post-judgment garnishment process by falsely stating in their disclosures that they owed Adell no money due to their setoff rights arising from loans that they had made to him.
>
> 3. Adell's filing and prosecution of his unnecessary and abusive bankruptcy petition in Florida to obtain a stay of the judgment when he could afford to post a bond to obtain a stay.

*Id.* The bankruptcy court also considered that Adell "took his assets to Florida to escape this court's punishment, and has so admitted." *Id.* at 19. Adell testified on August 17, 2010: "I moved to Florida to protect my assets, and I took certain steps. And I just wanted to protect my assets while we waited on appeal." *Id.* (internal quotation marks omitted).

As directed by the Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), the bankruptcy court then weighed "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; [and] (3) the difference between the punitive damages awarded by the [judge] and the civil penalties authorized or imposed in comparable cases" to ensure that the award of punitive damages complied with due process. *In re*

*JRH III*, 461 B.R. at 21 (citing *State Farm*, 538 U.S. 408).  After conducting this analysis, the

bankruptcy court entered an order assessing $2.8 million in punitive damages against Adell.  As to

the amount of the damages, the bankruptcy court stated:

> For filing the involuntary bankruptcy petition in bad faith, the Court punished Adell
> in an amount that was approximately half of the compensatory damages.  The Court
> now concludes that an enhanced sanction in an amount that is approximately 50%
> more than the compensatory damages [or fee award] of $1,854,192.73 is necessary
> and appropriate in this case.  The Court therefore fixes the sanction against Adell in
> the amount of $2,800,000.

*Id.* at 22.

A.

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate
> to carry out the provisions of this title.  No provision of this title providing for the
> raising of an issue by a party in interest shall be construed to preclude the court from,
> sua sponte, taking any action or making any determination necessary or appropriate
> to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  Federal courts have held that this provision authorizes bankruptcy courts to

impose a variety of sanctions, including punitive damages, against litigants in response to their

wrongful conduct before the court.  *See, e.g.*, *Bessette v. Avco Fin. Svcs., Inc.*, 230 F.3d 439, 445 (1st

Cir. 2000) ("Consistent with this determination, bankruptcy courts across the country have

appropriately used their statutory contempt power [under § 105(a)] to order monetary relief, in the

form of actual damages, attorney fees, and punitive damages, when creditors have engaged in

conduct that violates § 524."); *Fatsis v. Braunstein* (*In re Fatsis*), 405 B.R. 1, 10-11 (B.A.P. 1st Cir.

2009) ("Compensation for losses is not the only factor to be considered, however, because [s]anctions stem, in part, from a need to regulate conduct during litigation. Thus, setting the amount of an effective sanction may include punitive concerns as well as considerations of deterrence." (alteration in original) (citations omitted) (quoting *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 19 (1st Cir. 2003))).

B.

In *Chambers*, the Supreme Court addressed "whether the District Court, sitting in diversity, properly invoked its inherent power in assessing as a sanction for a party's bad-faith conduct attorney's fees and related expenses paid by the party's opponent to its attorneys." 501 U.S. at 35. The litigation began when Chambers agreed to sell his television and radio station, CTR, to NASCO for $18 million. *Id.* at 35-36. Six weeks later, Chambers decided that he no longer wanted to go through with the deal. *Id.* at 36. Chambers refused to file the necessary paperwork with the Federal Communications Commission, so NASCO filed suit for specific performance. *Id.*

Pursuant to a local rule in the Western District of Louisiana, NASCO notified Chambers on a Friday that NASCO would file suit on the following Monday to obtain specific performance and a temporary restraining order (TRO). *Id.* Chambers' response to this notice was to attempt to deprive the court of jurisdiction through a sham sale of the property at issue in the dispute. *Id.* Chambers and his attorney created a trust, with Chambers' sister as trustee and his three adult children as beneficiaries, and convinced the president of CTR to execute warranty deeds conveying

the property to the trust for recited consideration of $1.4 million. *Id.* at 37. Chambers' attorney

"admitted that he had intentionally withheld [this] information from the court" in order to complete

the sham transaction before the judge granted NASCO's TRO. *Id.* Chambers then went on to defy

the TRO and initiated "a series of meritless motions and pleadings and delaying actions." *Id.* at 38

(internal quotation marks omitted).

The district eventually granted judgment to NASCO, and the Fifth Circuit rejected

Chambers' appeal from the bench, held the appeal frivolous within the meaning of Federal Rule of

Appellate Procedure 38, and remanded to the district court for a calculation of fees and double costs.

*Id.* at 40. On remand, NASCO moved for sanctions under the court's inherent power, Rule 11, and

28 U.S.C. § 1927. *Id.* The district court reasoned that Federal Rule of Civil Procedure 11 and §

1927 were inadequate to address Chambers' bad-faith conduct during the litigation, described as

"acts which degrade the judicial system," including "attempts to deprive the Court of jurisdiction,

fraud, misleading and lying to the Court." *Id.* at 42. The district court sanctioned Chambers nearly

$1 million, the full amount of NASCO's litigation costs, and the Fifth Circuit affirmed under an

abuse of discretion standard. *Id.* at 40, 42.

On the subsequent appeal to the Supreme Court, the *Chambers* Court began its reasoning

with the following proposition: "Courts of justice are universally acknowledged to be vested, by

their very creation, with power to impose silence, respect, and decorum, in the presence, and

submission to their lawful mandates." *Id.* at 43 (quoting *Anderson v. Dunn*, 19 U.S. 204, 227

(1821)) (internal quotation marks omitted). The majority went on to acknowledge that the "power to punish for contempts is inherent in all courts," *id.* at 44 (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1873) (internal quotation marks omitted)), and that "[t]his power reaches both conduct before the court and that beyond the court's confines." *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45 (citation omitted). The *Chambers* court reasoned that because the "particularly severe sanction" of outright dismissal of a lawsuit is within the court's discretion, "the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." *Id.* at 45 (quoting *Roadway Express, Inc. v. Piper*, 477 U.S. 752, 765 (1980)). Furthermore, "when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,'" sanctions are entirely appropriate under a court's inherent authority. *Id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)) (internal quotation marks omitted). Applying these principles, the Supreme Court held that the district court did not abuse its discretion in granting NASCO the full amount of its attorney's fees. *Id.* at 55.

The Sixth Circuit has held that these inherent powers recognized by *Chambers* extend to bankruptcy courts. *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 477 (6th Cir. 1996) (citing *Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine, Inc.*) 77 F.3d 278, 284 (9th Cir. 1996)). The *Mapother* court stated unequivocally that "[b]ankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct." *Id.* This holding

is in line with at least one of our sister circuits, the Ninth Circuit. *In re Rainbow Magazine*, 77 F.3d at 284 ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court.").[4]

Additionally, this Court did not dispute—though it also did not hold—that bankruptcy courts may award punitive damages pursuant to this inherent power in *Tenn-Fla Partners v. First Union Nat'l Bank of Fla. (In re Tenn-Fla Partners)*, 226 F.3d 746, 751 (6th Cir. 2000). In *Tenn-Fla Partners*, the bankruptcy court awarded attorney's fees and costs to First Union after the debtor used fraud to obtain an order of confirmation. *Id.* The district court affirmed this grant of fees, citing *Chambers. Id.* This Court likewise affirmed that award, stating that "[w]hile we agree that attorney's fees should be awarded only in rare circumstances, our conclusion that Tenn-Fla Partners perpetrated fraud upon the court justifies their award in this instance." *Id.* First Union had cross-appealed the bankruptcy court's *denial* of punitive damages, and this Court did not question the bankruptcy court's authority to make such an award:

> In its cross-appeal, First Union contends that the bankruptcy court should have awarded punitive damages. As First Union acknowledges, however, such an award lies within the discretion of the trial court. In our view, the bankruptcy court did not abuse that discretion in denying punitive damages for the reasons set forth in its order.

---

[4]We note that this holding from *In re Rainbow Magazine* has been interpreted narrowly in subsequent Ninth Circuit jurisprudence. See the discussion *infra*, Section III. C.

*Id.* (citations omitted). In this Circuit, then, bankruptcy courts appear to have some authority to award punitive damages for abuse of process and fraud on the court under both § 105(a) and the court's inherent powers.

C.

That bankruptcy courts have both statutory and inherent punitive sanction powers does not, however, mean they are without limits. Those powers are circumscribed and have most often been limited to compensatory punitive awards of attorney's fees after findings of bad faith or contempt. *See, e.g.*, *In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996); *see also Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1193, 1189-97 (9th Cir. 2003); *Griffith v. Oles (Matter of Hipp)*, 895 F.2d 1503, 1509-21 (5th Cir. 1990).

Where bankruptcy courts have awarded substantial noncompensatory punitive damages, such as the initial punitive damages awarded in this case after Adell's bad faith filing of the involuntary bankruptcy petition, Congress explicitly granted them authority to award such damages for some limited purpose. *See, e.g.*, *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727, 736-40 (Bankr. E.D. Mich. 2003) (awarding substantial noncompensatory punitive damages under 11 U.S.C. § 303(i)). There are serious concerns with any court's having broad punitive sanction powers, given the risk of abuse. *Chambers*, 501 U.S. at 50 (1991) ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."). Those concerns are magnified

for bankruptcy courts, which have limited jurisdiction, are less capable of providing the necessary procedural protections than district courts, and are not Article III courts. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52-53 (1989); *Matter of Hipp*, 895 F.2d at 1509-18.

1.

Because of these concerns and the lack of explicit statutory authority, bankruptcy courts do not have a general statutory power to impose serious noncompensatory punitive damages. While § 105(a) establishes some punitive sanction power, that power is limited to sanctions that are necessary or appropriate to enforce the Bankruptcy Code. *In re Dyer*, 322 F.3d at 1193. Additionally, § 105(a) is prospective rather than retrospective; as such, that provision is best read not to encompass a power to award criminal-like punitive sanctions. Therefore, while § 105(a) grants bankruptcy courts the authority to award mild noncompensatory punitive damages, it does not provide a basis for awarding serious noncompensatory punitive damages. *Id.* at 1193-94. There is no other statutory basis for such an award. *Matter of Hipp*, 895 F.2d at 1509-21.

2.

Likewise, no other circuit has found that bankruptcy courts have a broad, inherent power to impose substantial noncompensatory punitive sanctions. Bankruptcy courts' inherent powers are limited, in part, because they are not Article III courts. *Matter of Hipp*, 895 F.2d at 1510-11. Congress has not clearly given bankruptcy judges equal powers to those of Article III judges, and

the Supreme Court has alluded to limits on bankruptcy courts' authority. *Id.* (citing *Granfinanciera*, 492 U.S. at 52-53). The Fifth Circuit and the Ninth Circuit have both held that bankruptcy courts do not have the authority to impose serious criminal sanctions, which are noncompensatory, though both allow bankruptcy courts to award relatively minor noncompensatory fines. *In re Dyer*, 322 F.3d at 1193, 1189-97; *Matter of Hipp*, 895 F.2d at 1509-21. In *Isaacson v. Manty*, the Eighth Circuit allowed noncompensatory, criminal sanctions of $5,000, but did not consider whether the bankruptcy court could have imposed more substantial sanctions. 721 F.3d 533, 538 (8th Cir. 2013). A $5,000 sanction is not considered a serious punitive sanction. *See In re Dyer*, 322 F.3d at 1193-94.

Due process concerns, arising in part from the bankruptcy courts' limited jurisdiction, limit their inherent powers; bankruptcy courts do not have the capability to provide all of the procedural protections necessary to impose noncompensatory punitive damages. *In re Dyer*, 322 F.3d at 1197. "[D]ue process guarantees need to be observed when a court resorts to its inherent power to punish misconduct simply because those powers are enormous; the procedural guarantees are the restraint that protects against intended or unintended abuse of that power." *Id.* (internal quotation marks omitted). The Ninth Circuit determined that bankruptcy courts lack punitive inherent powers because of this inability to provide sufficient procedural protections. *Id.*

The exercise of certain powers requires greater procedural protections than others. *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988). Serious noncompensatory punitive damages

require greater procedural protections than mild noncompensatory punitive damages because, by

their nature, they carry greater risk of abuse. *Cf. Int'l Union, United Mine Workers of Am. v.*

*Bagwell*, 512 U.S. 821, 827, 831-33, 838 (1994) (finding that the procedural protections required

to impose serious criminal sanctions, including the right to a jury trial, are greater than for

noncompensatory petty fines).[5] Courts have found that "the imposition of a sufficiently substantial

punitive sanction requires that the person sanctioned receive the procedural protections appropriate

to a criminal case." *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 130 (2d Cir. 1998); *see also In*

*re Dyer*, 322 F.3d at1197 (relating the procedural concerns about punitive inherent authority

sanctions to those for criminal contempt); *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th

Cir. 1999) (equating punitive sanctions and criminal contempt sanctions and finding that both

require "many of the due process safeguards afforded to defendants in criminal proceedings,"

including the right to a jury trial in "serious cases"); *Matter of Hipp*, 895 F.2d at 1521 (requiring that

criminal contempt be prosecuted by a disinterested representative of the state). Even for minor

noncompensatory punitive damages, a court should provide greater procedural protections than for

compensatory damages, including finding proof beyond a reasonable doubt. *See Mackler Prods.,*

*Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000) (finding that such protections are required for a

$2,000 punitive sanction that the court classified as "criminal in nature"); *Cf. Bagwell*, 512 U.S. 833-

34. Because noncompensatory punitive damages are not tied to a finite cost or fee and because

---

[5]However, whether noncompensatory punitive damages are classified as civil or criminal is not relevant to the protections necessary because the nature of the damages is the same and raises the same due process concerns. *See Bagwell*, 512 U.S. at 831.

bankruptcy courts are not Article III courts, have limited jurisdiction, and lack the capability to provide the necessary procedural guarantees, bankruptcy courts lack the inherent power to award serious noncompensatory punitive sanctions. *In re Dyer*, 322 F.3d at 1197; *Matter of Hipp*, 895 F.2d at 1513-17.

In addition, there are constitutional concerns with bankruptcy courts having broad inherent powers beyond those given to them by Congress. *Matter of Hipp*, 895 F.2d at 1510-11. If Congress had wanted bankruptcy courts to have such broad power, it could have authorized it. Congress has discussed at length what powers bankruptcy courts should have but has not statutorily established noncompensatory punitive sanction powers. *Id.* at 1510-15 (discussing the legislative history of the Bankruptcy Code and the powers given to bankruptcy courts). The constitutional concerns related to extending such powers to bankruptcy courts support our holding that their powers are limited.

In sum, bankruptcy courts lack the statutory authority to impose serious noncompensatory punitive damages. They also lack the inherent authority to impose such damages. We need not decide at this juncture what defines a "serious" noncompensatory award of punitive damages because the $2.8 million awarded below is serious under any definition.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.